(88 App. Div. 477.)

WALSH v. NEW YORK & KENTUCKY CO.

(Supreme Court, Appellate Division, First Department. December 11, 1903.)

1. EMPLOYMENT BY YEAR—DISCHARGE OF EMPLOYÉ—ACTION FOR WAGES.

Where one is employed as a salesman for a year, his wages to be paid by the month, and he is discharged after a month's wages are due, and he has performed several days' work on the next month, he can recover the month's wages, subject to any counterclaim of the employer, but for the subsequent days he can recover only if his discharge was wrongful, and then only as damages.

Appeal from Appellate Term.

Action by Thomas M. Walsh against the New York & Kentucky Company. From the determination of the Appellate Term affirming a judgment of the City Court entered on a verdict for plaintiff, and also affirming an order of the General Term of the City Court which affirmed said judgment and an order denying a motion for a new trial, defendant appeals. Modified.

The action was brought in the City Court to recover for services rendered by the plaintiff to the defendant pursuant to a contract made between them as its salesman. The complaint alleged that the defendant had promised to pay to the plaintiff $416.66 per month and his expenses, and that there was due for services rendered and expenses incurred between October 1, 1901, and November 7, 1901, the sum of $546.42. The answer contains a general denial, and as a separate defense alleges that the plaintiff broke the contract set forth in the complaint, in that he refused to obey orders, rendered false accounts, and practiced deception on the defendant; and it is further averred that the alleged contract was by its terms not to be performed within a year, and that no proper memorandum thereof was made in writing.

The plaintiff testified that he knew the secretary of the defendant. He was then shown a paper, and testified: "That is my signature on that paper. That was delivered to me on June 12th last. I worked for the company under that contract until November 7th last." The paper was then offered in evidence, and objected to as incompetent, as its authenticity was not proved, and no authority shown to bind the defendant, and no proof was given that the defendant contracted with plaintiff. The paper, however, was admitted and read to the jury, and defendant excepted. It is in the form of a letter dated June 12, 1901, from the plaintiff to W. F. Balkam, New York & Kentucky Company, saying: "I beg to confirm herewith a contract made with you and Mr. Duffy in your office at Rochester on the twentieth day of May, 1901, to represent the New York and Kentucky Company for one year beginning July 1st, 1901, the New York and Kentucky Company agree to pay me a salary of Five thousand dollars per year ($5000.) and expenses. Salary

---

¶ 1. See Master and Servant, vol. 34, Cent. Dig. §§ 41, 99.

to be received in monthly installments of $416.66." It is marked, "Accepted, New York & Kentucky Co., W. F. Balkam, Secy. June 12/01."

The plaintiff further testified that Mr. Duffy, mentioned in the letter, is president of the company, and had a conversation with him in regard to the contract; that he worked under the contract from July 1st to November 7th, under the instruction of Mr. Curiel, manager of the New York office, who asked for his resignation on the last date named, and, when it was refused, discharged him, and his wages for October and up to November 7th were not paid. The cross-examination and redirect examination of the plaintiff related principally to whether or not the plaintiff, while salesman for the defendant, had followed the instructions given him by Mr. Curiel, and, in this connection, whether or not he had, while in New Orleans, made sales to the firm of Mackie & Co. on consignment and not by absolute sale. The plaintiff testified that he wished the defendant to recognize the sales as absolute, and that they shipped the goods as absolute sales, and then he and another salesman were going to sell them for Mackie & Co., which was the condition upon which that company received the goods, and this he told Mr. Curiel, and it was necessary to do this in order to introduce the defendant's champagne. He denied that he had failed to make outright sales and that he had been told to sell only in such manner. The plaintiff also testified that he reached New Orleans September 20th, and worked from that time till October 14th endeavoring to introduce its champagne, absinthe, Scotch whisky and Bass ale; that he returned from New Orleans to New York, and was then sent to Baltimore and worked for the company till November 2d, when he again returned to New York, where, on November 7th, he was discharged.

The plaintiff having rested, Charles W. Mackie was called for the defendant, and testified that he told the plaintiff in New Orleans, in September, that the only way he would take hold of the champagne was on consignment, and this was agreed to, and when the goods were received marked "90 days" he called plaintiff's attention to it, and the latter said he would fix matters when he returned to New York; that plaintiff and Mr. Davis, the other salesman, sold most of the goods for them, and the defendant was paid for the goods sold, and the balance shipped back; that a few bottles of the goods sold were returned as damaged, and these were sent back. Mr. Curiel testified that instructions were given before the men went to New Orleans that not one case would be sold on consignment, but they must be bought outright, and that when the orders came in he acted on them as absolute orders; that a draft was sent dated October 17, 1901, at 90 days, to Mackie & Co., which was not paid, and which came back marked "Goods are on consignment to be paid for as sold"; that some of the goods for which this draft was drawn were returned; that on learning of the plaintiff's course he wrote him on October 26, 1901, that the draft had been returned, and added, "We can only say that this was in direct violation of our orders and against explicit instructions." The plaintiff replied stating that he had told Mr. Curiel that it was necessary to guaranty the sale of the goods to Mr. Mackie. The orders which are in evidence are all absolute in form. Mr. Curiel further testified that the plaintiff did not want to be dismissed, and he made him a proposition to pay him "for October, and up to November 7th, if he agreed to leave the employ of the company without making any other claim under the contract, which would have lasted six or seven months longer, which he refused to do."

The jury returned a verdict for plaintiff for $565.57, and from the order of the Appellate Term affirming the order of the General Term of the City Court, which affirmed the judgment so entered, the defendant appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Arnold C. Weil, for appellant.

J. Delahunty, for respondent.

O'BRIEN, J. Were there no evidence other than the letter written by the plaintiff to the defendant, and in form accepted by one

describing himself as the secretary of the company, and which purports to set forth the terms of the agreement between the parties, we should have serious difficulty in sustaining the ruling made admitting it, without some proof that the person signing it as secretary of the defendant was in fact such, and had the authority, express or implied, so to bind the defendant. Apart, however, from this letter, there was evidence given from which the arrangement between the parties was clearly shown, if not actually conceded, and therefore we need not concern ourselves further with discussing the question as to whether the ruling admitting the letter was or was not erroneous. In this connection what was said by Judge Cullen in the case of Turner v. Kouwenhoven, 29 Hun, 232, is applicable. Therein motion to dismiss the complaint at the close of the plaintiff's case was denied, and exception taken, and the defendant then voluntarily introduced evidence which tended to show performance of the contract by the plaintiff; and it was held:

"It is unnecessary to consider whether the trial court erred in refusing to dismiss the complaint at the end of the plaintiff's case. The subsequent evidence cured the error, if error there was."

At the close of the testimony herein there was no serious dispute as to the facts, and from them it appears that the plaintiff entered the defendant's employ as a salesman for the term of one year at an annual salary of $5,000, payable in monthly installments of $416.66. During the month of October the defendant expressed dissatisfaction because of the failure of the plaintiff to obey instructions, and principally in sending for goods to be shipped upon consignment, instead, as directed, of sending for goods only where absolute sales were made. Apart, however, from thus expressing dissatisfaction, no definite action was taken until, finding that, in the face of repeated warnings not to pursue that course of dealing, certain goods were ordered which were represented as having been sold absolutely, but which in fact the plaintiff had arranged with the purchaser to receive on consignment, the defendant on November 7th, because of this violation of instructions, discharged the plaintiff. Thereupon the plaintiff brought this suit for the amount due him for the month of October and for the seven days in November during which he had been in the defendant's employ prior to his discharge, for which time he had not been paid. The jury found for the full amount, together with something in addition, and, viewing, as we must, the jury's verdict as settling any disputed facts in plaintiff's favor, the question presented for our determination is whether or not the verdict can be legally sustained.

In affirming the judgment in favor of the plaintiff the Appellate Term said:

"The defendant could not retain the plaintiff in its employ and refuse to pay him for his services the amount that it had agreed to pay him. It may be that, if it had set up in a counterclaim the matters alleged as a defense, it would have been allowed on the trial to show how much it had been damaged by the wrongful acts of the plaintiff. * * * The plaintiff made out a case. The defendant did not make out a defense. The court should have directed a verdict for the plaintiff at the close of the case."

With respect to the salary claimed for the month of October, we think that this statement of the law is entirely accurate; but our view is different as to the rule to be applied with respect to the seven days of November. The appellant, in contending for a reversal of the judgment in its entirety, has referred us to the case of Turner v. Kouwenhoven, 100 N. Y. 115, 2 N. E. 637. That was an action brought by a servant, after the expiration of the term of his employment, to recover the contract price for his services, and it was defended upon the ground that the servant had retained without the consent of the master, and failed to account for, a portion of the proceeds of sales. It was held that this alone did not constitute a complete defense, and that a failure to pay over the moneys, caused by mistake or neglect, in the absence of a provision in the contract covering it, will not defeat a recovery for the contract price less the amount so retained. The appellant relied, however, upon the following statement, which is to be found in the opinion in that case:

"The rule is well settled in this state that if the master, for good and sufficient cause, discharge the servant before the expiration of the term of service, or if the servant, without good cause, quit service before the end of the term, he can recover nothing for the part of the term past nor for the future. But where the servant has served his full term this rule has no application. * * *"

Upon this statement of the rule the appellant builds up his argument, from which he would have us draw the conclusion that the plaintiff could recover nothing even for the month of October. In this, however, the appellant overlooks the fact that what the court was therein discussing was the rule applicable to an entire contract, and not to one such as is here involved, where, by the terms of the agreement, it was separable to the extent of the payments, which were to be made monthly. The rule undoubtedly is, where the contract is entire and performance of the entire contract is a condition precedent to the receipt of any money under it, that there the failure of the person to show that he has fully performed the contract, or has by the wrongful act of the defendant been prevented from fulfilling it, will bar a recovery even for time actually spent in its part performance. Thus a florist engaged for a season to raise flowers for a spring market, and abandoning his contract before the expiration of the term, at which latter time he was to be paid, or an architect employed to plan and direct the construction of a building whose commission was to be paid only when the building is completed, or a sea captain who has undertaken to command a ship between ports —in these and like instances, the contract being entire, the entire performance is a condition precedent to a recovery for services rendered. The same rule, however, does not apply to a contract of ordinary service for a specified time, payable in installments, where there is nothing in the nature of the work which shows that its entire performance was required and contemplated in order to bind the employer to pay any part of the stated compensation. In England the rule may be otherwise, for there the doctrine of entirety of contract has in some cases been carried to the extent of refusing

to allow anything for services actually rendered under a contract for a stated period, and although periodical payments were stipulated to be made. A reference to the cases in this state, however, will show that that rule has never been here applied. In Wood on Master and Servant, § 129, it is said:

"In England it is held that when a servant is discharged for a legal cause no recovery can be had by him for services rendered under the contract, but in this country the rule is otherwise, and when a servant is discharged for any cause he is permitted to recover the value of his services, not exceeding the contract price, less such damages as the master has sustained by reason of torts committed by him in the service up to the time of his discharge."

In the early case of Tipton v. Feitner, 20 N. Y. 429, is an interesting discussion by Judge Denio of the theory of entirety of contract, wherein he says:

"There is another class of cases arising out of contracts for services, where the party employed agreed to serve for a fixed *period * * * and was to be paid by the week or month, * * * in which it has been uniformly held—except in one case, where the default was occasioned by the death of the party employed—that the whole of the services must be performed in order to warrant a recovery. * * * These cases proceed upon the ground that the contracts were entire. * * * But suppose a contract for a year, the employers agreeing to pay the servant ten dollars at the end of each month, the employer being in arrears several full months. In such a case I conceive that the servant should be permitted to recover for the wages earned, subject to recoupment of the master's damages for the time covered by the breach. I am ignorant of any principle upon which it could be held that he could not recover anything. It certainly cannot be upon the ground of the nonperformance of a condition precedent, for it is absurd to say that under such a contract serving the last month was a condition to the payment of the first. * * * In the case of services for periodical payments, they must be permitted to recover for the part which by the terms of the agreement has become payable, upon deducting damages of the other party in respect to the portion unperformed."

This rule was followed in the case of Bowdish v. Briggs, 5 App. Div. 592, 39 N. Y. Supp. 371, wherein recovery was sought for wages pro rata, the defense being that the contract was entire, and it was said:

"If according to the contract there was a month's wages due and unpaid, then, according to the opinion of Judge Denio in Tipton v. Feitner, 20 N. Y. 429, a subsequent breach by the plaintiff of the contract would not prevent a recovery by the plaintiff of the amount then due, but the defendant would be left to his remedy by way of recoupment for his damages, if any, for the breach."

And in Clark v. Fernoline Chem. Co. (Super. Ct.) 5 N. Y. Supp. 190, where an action was brought for services actually rendered by a discharged employé, and the plaintiff recovered, it was said:

"The plaintiff had rendered service, and it had been accepted. * * * The case is to be treated as if the plaintiff had rendered service without objection for the entire period for which he had been engaged. The case, therefore, is not analogous to one in which the servant did not fully perform, or unskillfully performed, his contract of employment. In such a case it is now settled that failure to fully perform, or unskillful performance, is no bar or defense to an action for services rendered, and that the only remedy of the employer in such an action is to offset or recoup the damages sustained by him."

The rule deducible from these, as well as from all the cases in this state that we have examined, is that even where a contract is made for a year, but there is provision for periodical payments during the time, and the contract in its nature does not necessarily contemplate entire performance as a condition precedent to compensation, the servant, when discharged for cause, is entitled to recover the amount due for the month, or his monthly wages, as wages earned, subject to recoupment by the master for any damages suffered by him by reason of the neglect, unskillfulness, or nonperformance of the servant. The defendant here not having set up any counterclaim, and it being practically conceded that the plaintiff worked during the whole month of October, and at the end of that month there was due and payable the sum of $416.66, his month's wages, it would, for the reasons given by the learned Appellate Term, have been proper for the trial court to direct for that amount a verdict for the plaintiff.

With respect, however, to recovery for the seven days of the month of November, a distinction is to be observed. Where during the month, and before the salary becomes due and payable under the contract, a servant is discharged, then under the authorities no recovery in an action such as this can be had for the days in that month during which the services may have been performed, and for the reason that the contract is an entirety as to each month, and a recovery for any portion thereof could be had, not in an action for wages, but only in an action for damages for breach. Whether rightfully or wrongfully discharged, therefore, the cases hold that the servant's remedy would be, not in a suit to obtain a proportionate amount of the month's salary as wages due, but rather in an action for a breach of the contract, therein to recover upon a quantum meruit. Thus in Arnold v. Adams, 27 App. Div. 348, 49 N. Y. Supp. 1041, an action brought to recover wages for a part of a month where the servant was employed for a year with monthly payments, it was said:

"He did not render services for them for the full month, so that in any event he would not be entitled to his month's salary, having neither performed nor offered to perform services for them during the whole of that period. Having been discharged, however, whether rightfully or wrongfully, he would have no claim for wages, except for what was due him at the time of his discharge; his claim against them would be one for damages for a breach of their contract. The action here is not one for damages, but for the monthly salary of Arnold, and, under the authorities herein referred to, cannot be maintained."

So, too, in Elliott v. Miller (Com. Pl.) 17 N. Y. Supp. 526, it was held (headnote):

"Where an employé whose wages are payable at the end of each month is discharged wrongfully in the middle of the month, he cannot recover, in an action for wages, compensation for the services rendered during the first half of that month, but for that purpose must resort to an action for damages."

It follows from these authorities that the plaintiff, having been discharged on the 7th of November, could not in this action recover for any portion of that month. The respondent insists that the ques-

tion as to whether he was rightfully or wrongfully discharged was settled in his favor by the verdict of the jury, and, therefore, that he should be allowed to recover herein. In addition, however, to the cases which we have just cited and which hold to the contrary, it may be said that the difficulty with the plaintiff's contention is that the case was not presented to the jury upon any such theory, and that, if it had been, the verdict would clearly be against the weight of evidence, because there is no serious dispute but that the plaintiff, in violation of his instructions, ordered goods to be shipped from this state to New Orleans, in the far South, where they were received, not as an absolute sale, but on consignment. The failure to obey the defendant's instructions, which thus resulted in taking from them possession of their property upon what were at least misrepresentations, was a legal cause justifying the plaintiff's discharge.

The verdict shows that there was allowed, not only a recovery for the month of October and the seven days of November, but something in addition. The complaint alleged expenses incurred by plaintiff, but none were proved on the trial. Our conclusion, therefore, is that the verdict of the jury, so far as it allows the plaintiff compensation for any part of November, or for any amount other than his wages for October, cannot be legally supported upon the record.

It follows that the determination of the Appellate Term affirming the judgment and order appealed from should be reversed and a new trial ordered, with costs to appellant to abide event, unless plaintiff stipulates to reduce the judgment as entered upon the verdict to the sum of $521.47; in which event the judgment as so modified, and the order denying motion for new trial, should be affirmed, without costs upon any of the appeals. All concur.