(94 Misc. Rep. 197)

### GOODKIND v. STEINBERG BROS. & KRIPITZER, Inc.

(Supreme Court, Appellate Term, First Department. March 30, 1916.)

MASTER AND SERVANT ☞73(4)—CONTRACT OF EMPLOYMENT—CONSTRUCTION—ENTIRE CONTRACT.

Defendant employed plaintiff as a salesman to handle its hats, the contract to commence June 21st and continue for one year. Plaintiff was to receive commissions based on defendant's entire sales, and the contract provided that there should be an accounting in December after the fall season. The fall season in the trade ran from June to November 15th or 20th. The contract was terminated in October, plaintiff becoming a member of a competing firm. Held, that the contract was an entire one, and, where defendant claimed that plaintiff wrongfully breached his contract, that question should be submitted to the jury, for in case of such breach there could be no recovery for commissions earned up to that time.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 94–98; Dec. Dig. ☞73(4).]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Percy Goodkind against Steinberg Bros. & Kripitzer, Incorporated. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued February term, 1916, before LEHMAN, WEEKS, and DELEHANTY, JJ.

Joseph Rosenzweig, of New York City, for appellant.

Goldstein & Goldstein, of New York City (Abraham Lipton, of New York City, of counsel), for respondent.

---

WEEKS, J.  On May 4, 1915, the parties to this litigation entered into a contract whereby the defendant corporation agreed to employ plaintiff as resident and traveling salesman to handle its line of hats, "such as it manufactures and will manufacture," which contract was to commence on June 21, 1915, and to continue for the term of one year.  The plaintiff accepted said employment and agreed to establish and maintain an office by himself, without any cotenant, to conduct the same as the office of defendant, and not to handle or exhibit any other line of goods, either at said office or when traveling, and to travel as and when directed by defendant during the term of the agreement, and to devote himself exclusively to the business of defendant.

The defendant agreed to advance sufficient money to fix up and maintain said office, and to pay the necessary traveling expenses, and to allow plaintiff a drawing account of $50 per week, except that during the month of December, 1915, such drawing account should only be $25 per week, if no more money was then due plaintiff for commissions theretofore earned.  The moneys advanced to and drawn by plaintiff were to be deducted out of any commissions due to plaintiff at the end of each season, when an accounting was to be had. It was agreed that no commissions were to be due on goods returned or accounts defendant "shall be unable to collect, although charged upon the books," and that any commission advanced or paid upon such sales should be deducted at the time of such accounting.  The defendant agreed to pay plaintiff a sum equal to 4 per cent. on all goods charged upon its books and paid for, if the total for the fall season of 1915 be under $50,000, and should the business done by defendant during said season amount to $50,000 or over, a sum equal to 5 per cent. of the total goods sold by it and paid for, "the same compensation upon the same basis to apply for the following season of 1915 to 1916, as regards commissions and amount of business done."  It was conceded that the fall season started in June and ended between November 15th and 20th.

The plaintiff entered upon the performance of the contract, the moneys were advanced by defendant, and the office opened, and prior to October 8, 1915, the total of goods sold by defendant and charged upon its books, after deducting goods returned and uncollectible accounts, was $60,456.33, on which plaintiff claims to be entitled to commissions of $3,022.81, less $2,040.25 paid on account, and judgment was awarded to him upon a trial before the court without a jury for the full amount of $952.85.

The plaintiff testified that upon all goods sold there was a discount of 10 per cent. to the trade, so that the amount actually due to defendant and paid to it was in all cases 10 per cent. less than the face of the invoice as charged upon the books of defendant.  If this were the only question in the case, we would reduce the recovery in the sum of $302.28, and, as so reduced, affirm the judgment; but another and more serious question is involved.

The first complaint filed by plaintiff was insufficient, and it was later amended to set up a termination of the agreement by mutual

consent on October 8, 1915, and that the season of business mentioned in the agreement terminated on that date; but before the case was finally reached for trial a further amended complaint was filed, alleging that the plaintiff had performed all the terms of the contract until October 8, 1915, when the defendant wrongfully and without cause discharged him. The answer denied these allegations, and set up a breach of the agreement by plaintiff in leaving defendant's employ before the termination of his contract.

Upon the trial the court refused to consider the question as to whether the plaintiff left voluntarily or was discharged, because there was no claim for damages for breach of contract pleaded by the defendant. In this we think the court was in error, as the contract was, in our opinion, an entire contract, certainly for the fall season, and plaintiff was not entitled to recover, unless he proved performance on his part or breach of the contract by the defendant. Seaburn v. Zachmann, 99 App. Div. 218, 90 N. Y. Supp. 1005; distinguishing Walsh v. N. Y. & Kentucky Co., 88 App. Div. 477, 85 N. Y. Supp. 83.

Prior to the making of the contract in suit the plaintiff had a contract with defendant, and was familiar with defendant's business, and knew that it was divided into two seasons, and that the defendant was obliged to make contracts and commitments in order to be prepared to manufacture the merchandise for delivery to its customers. He knew that the fall season did not terminate until November 15 or 20, 1915, and the contract which he made required him to give his entire time and business ability to the handling of defendant's line of goods until June 21, 1916, in return for which he was to be paid by a commission, not based solely upon the goods which he sold personally, as under his former contract, but upon the gross sales of the defendant, whether made by or through him or otherwise.

The defendant was a close corporation, and at the time the contract was made its president was Morris Kripitzer, who on September 30, 1915, sold out his stock to his two associates, and plaintiff went into partnership with him on October 15, 1915, under the name of Goodkind & Kripitzer, manufacturing and selling the same line of goods as defendant.

All rules of interpretation of a contract are aids to one purpose, and that is to discover the intention of the parties, and we are unable to conceive that the defendant would have made the contract here involved, if it had not believed that it secured the exclusive services of plaintiff for one year in introducing its line of goods into a market where the quality of the manufactured article would create a reputation that would attract future business. With that end in view the contract was made for a fixed period of one year, and provided for the establishment and maintenance in the corporate name of an office without any cotenant, and required plaintiff to travel throughout the United States whenever and wherever it might direct, and further provided for an accounting at the end of such season.

If we apply the rule, as stated in Clark v. West, 137 App. Div. 23, 29, 122 N. Y. Supp. 380, 385, "that a contract is entire when it appears that one party relies upon the *performance* by the other party

of his promises, and divisible when it appears that the reliance was on the *promise* of the other party and a remedy to recover damages," we can arrive at but one conclusion. It never could have been the intention of either of the parties to the contract in suit that the plaintiff had the right to breach his contract in the middle of a season, leaving the defendant to recover damages, which, from the nature of the contract, would be almost impossible of proof. The illustrations given in Walsh v. N. Y. & Kentucky Co., 88 App. Div. 477, 483, 85 N. Y. Supp. 83, 86, are peculiarly applicable to the present case:

"Thus a florist, engaged for a season to raise flowers for a spring market and abandoning his contract before the expiration of the term, at which latter time he was to be paid, or an architect employed to plan and direct the construction of a building, whose compensation was to be paid only when the building is completed. * * * In these and like instances, the contract being entire, the entire performance is a condition precedent to a recovery for services rendered."

The judgment appealed from should be reversed, and a new trial ordered, with $30 costs to appellant to abide the event. All concur.