## Case No. 2,941.

### COE v. BRADLEY.

[9 O. G. 541; Cox, Manual Trade-Mark Cas. 276.]

Circuit Court, D. Massachusetts. Feb. 17, 1876.

ACTION FOR BREACH OF COVENANT — PLEADING — SPECIFIC PERFORMANCE.

1. Where a covenant goes only to a part of the consideration on both sides, and a breach of it may be paid for in damages, it is an independent covenant, and an action can be maintained for a breach of the covenant, on the part of the defendant, without averring performance in the declaration.

2. Where the plaintiff's covenants, which form the consideration, be dependent, yet if part of the consideration be accepted and enjoyed by the defendant, and the plaintiff have no other remedy than on the covenant, and the breach on the part of the plaintiff can be compensated for in damages, the plaintiff may recover without alleging performance of the residue.

3. Courts of equity are still more liberal in their interpretation of contracts, allowing a specific performance of a contract, sometimes to be enforced at the suit of a party who has not punctually performed the contract on his own part, but has been in default, where the default on his part is such as admits of compensation.

[In equity. Bill by Andrew Coe against William L. Bradley for an accounting.]

George S. Boutwell, for complainant.
H. G. Parker, for defendant.

SHEPLEY, Circuit Judge. This bill is filed upon a written contract between the parties dated February 13, 1862. By this contract Coe assigns to Bradley the exclusive use for seven years of his trade-mark, "Coe's Superphosphate of Lime," reserving a limited right previously granted to the firm of Coe & Co. Coe covenants that he is the exclusive owner of said trade-mark, with the exception above named. He constitutes Bradley his attorney, irrevocable, with authority to prosecute any suits necessary to make his rights available, and protect himself in their full enjoyment. These are the only express covenants and agreements on the part of Coe. Bradley covenants to energetically prosecute the business of manufacturing and selling the superphosphate, and to continue to make it of as good quality as that before made by Coe; and, so long as the agreements above mentioned shall be kept by Coe, Bradley shall have the use of the trade-mark, to pay him one-third of the net profits of the business, and of other "bone business," first reserving out of the profits of the business. as his own compensation, three thousand dollars. This clause is also to be found at the close of the contract, "any breach of the agreements

above cited by either party or his representatives shall be a release to the other party and his representatives from all obligations by him or them to be performed but for such breach." By a supplementary contract of May 2, 1862, between Coe and Bradley, and Russell and Coe, and Elmore Coe, the plaintiff's share of profits is reduced from one-third to one-sixth part. During the existence of this contract Coe, (in violation of his agreement, as implied from his conveyance of the exclusive right of the trade-mark to Bradley,) at Chelsea, and other places, manufactured and put on the market a fertilizer of an inferior quality, sometimes under the trade-mark of "Coe's Superphosphate of Lime," and sometimes "Andrew Coe's Superphosphate of Lime," which last name so nearly resembled the original trade-mark that it was calculated to deceive, and did deceive, purchasers, and, therefore, the use of it was as much a violation of his implied agreement with Bradley as the unauthorized use of the words "Coe's Superphosphate of Lime." A court of equity will examine to see if the differences are merely colorable. Dixon Crucible Co. v. Benham, Am. Trade-Mark Cas. 449; 2 Kent, Comm. (12th Ed.) 366, cases in note; Meriden Britannia Co. v. Parker, 39 Conn. 450.

It is claimed on the part of the defendants that such unauthorized use of the trade-mark by Coe himself, in violation of the letter and spirit of the contract, was such a breach of the contract as exonerated the defendants from any liability to account and pay over to the complainant one-sixth part of the profits of the manufacture under the contract. In support of this position, reliance is placed on the clause in the contract that "any breach of the agreements above cited by either party or his representatives shall be a release to the other party and his representatives from all obligations by him or them to be performed but for said breach." The effect of this clause in the contract is only to enlarge the right of rescission, and enable one party to discharge himself from the contract, and terminate his obligations under it, at his election, in case of the failure of the other party to perform some portion of the contract not otherwise regarded as an essential part of one entire act. Wallace v. Antrim Shovel Co., 44 N. H. 521. But, although Bradley well knew that Coe was manufacturing and selling under the trade-mark in violation of his implied agreements under the contract, and of an express agreement under a later and supplementary contract. he did not elect to terminate his obligations and abandon his rights under the contract by rescission, but continued to manufacture in great quantities, and to put the manufactured article upon the market under the trade-mark. No construction can be given to this clause which would enable one party to the contract to enjoy the fruits of it without compensation, upon the ground that the other party had failed to perform some stipulation on his part which was not so essential to the contract, but that the breach of it could well be compensated by damages. The claim of the defendant that the covenants broken by the complainant were of such a nature that no recovery can be had by him of the defendant cannot be sustained. The consideration of the promises of Bradley was the conveyance by Coe of the exclusive right to the trade-mark, and there is no question but that the conveyance was operative to vest in Bradley the exclusive right to it for the term of seven years, subject only to the exception in the contract itself. The express covenant of Coe was only of exclusive ownership in himself, and that no person besides the excepted party specified had been authorized to use it. There has been no breach of this express covenant. The implied covenant that he would not himself be a trespasser or infringer on the right and title he had vested in Bradley is the one which he violated, and Bradley had a right to elect to retain the title, and claim damages against Coe for infringement of his right, or to rescind the contract under the final clause enlarging his right of rescission. Where a covenant goes only to a part of the consideration on both sides, and a breach of it may be paid for in damages, it is an independent covenant, and an action can be maintained for a breach of the covenant on the part of the defendant without averring performance in the declaration. Where the plaintiff's covenants which form the consideration be dependent, yet if part of the consideration be accepted and enjoyed by the defendant, and the plaintiff have no other remedy than on the covenant, and the breach on the part of the plaintiff can be compensated in damages, the plaintiff may recover without alleging performance of the residue. Stevers v. Curling, 3 Bing. N. C. 355; Cutter v. Powell, 2 Smith, Lead. Cas. 28, cases in note; Pordage v. Cole, 1 Saund. 320, and Williams' note, 4; Campbell v. Jones, 6 Term R. 573; Carpenter v. Cresswell, 4 Bing. 409; Foster v. Purdy, 5 Metc. [Mass.] 442–444; Wallace v. Antrim Shovel Co., 44 N. H. 521. These are the well-settled rules applicable to proceedings in courts of law.

Courts of equity are still more liberal in their interpretation of contracts, allowing a specific performance of a contract sometimes to be enforced at the suit of a party who has not punctually performed the contract on his own part, but has been in default, where the default on his part is such as admits of compensation. In Hayward v. Angell, 1 Vern. 223, the lord keeper said: "In all cases where the matter lies in compensation, be the condition precedent or subsequent, he thought there ought to be relief." The defendant relies upon certain other contracts set up in his answer between himself and the complainant. Two of these are prior in date to the contract of February 13, 1862, and it

is not perceived how that contract is affected by them. The subsequent contracts recognize the right to the trade-mark which Bradley has under the contract of February 13, 1862, but do not confer upon him such a right independent of that contract. The contract of August 1, 1862, recognizes the existence and validity of the previous contracts. The case should be referred to a master to report the amount to which the complainant is entitled for his one-sixth part of the net profits under the contract, and also to report what sum is to be allowed the complainant in reduction by way of compensation in damages for the infringement of the defendant's exclusive right to the trade-mark by the complainant by his use during the term of the trade-mark "Coe's Superphosphate of Lime," or of the trade-mark "Andrew Coe's Superphosphate of Lime."

Decree for reference to master in accordance with the opinion to be prepared and submitted to the court.