(137 App. Div. 23.)

### CLARK v. WEST.

(Supreme Court, Appellate Division, Second Department.    March 31, 1910.)

1. CONTRACTS (§ 171*)—CONSTRUCTION—ENTIRE OR SEVERABLE—INTENT.

   While various rules and matters bear with greater or less weight on the question of the entirety or divisibility of a contract, the determining factor is the intent of the parties, to be gathered from its several provisions and the circumstances surrounding the agreement.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 754–757; Dec. Dig. § 171.*]

2. CONTRACTS (§ 171*)—ENTIRE OR SEVERABLE.

   The publication of several books being a protection to each party against loss from failure of any one book, a contract by which plaintiff agreed to prepare several books for defendant is not divisible, so as to entitle plaintiff, having prepared one book, to abandon the contract, and recover the entire payment for such book, without regard to whether sufficient profits have arisen from its publication and sale, and leave defendant to recoup his damages for the unperformed part of the contract; the books, to be prepared by plaintiff, and published and sold by defendant, being a series of text-books for law students, plaintiff's pay to be $6 per page, $2 per page advance payment to be made as he turned the pages in, and the remaining $4 per page for any and all books to be paid by plaintiff receiving at the end of each six months one-sixth of the net receipts from the combined sales of all books prepared and published, less all previous payments to plaintiff and all money then due from him to defendant, 'till the amount of $6 per page for each book shall have been paid, and defendant agreeing to push the sale of any book published, so long as anything is due plaintiff under the terms of the contract.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 756; Dec. Dig. § 171.*]

3. CONTRACTS (§ 303*)—PERFORMANCE—BREACH BY OTHER PARTY.

   Though the contract, by which plaintiff agreed to prepare a series of books to be published and sold by defendant, plaintiff to receive $2 per page as the pages were furnished, and $4 per page additional, by being paid each six months one-sixth of the net receipts from the combined sales of all books prepared and published, till the amount of $6 per page for each book is paid, is not divisible, but entire. yet it providing that the copyright of all books should be taken out in plaintiff's name, defended by him against adverse claims, and assigned to defendant "subject to the conditions of this contract"; and defendant having breached it by taking out the copyright of the first book prepared in the name of his publishing company, and, while offering to make amends by assignment and reassignment, having suggested that, instead thereof, he give a bond to plaintiff, coupling therewith a demand that plaintiff should protect the copyright, thereby adding a burden beyond the contract, perhaps impossible to sustain, plaintiff could cease work and sue for breach of the contract.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1427, 1428; Dec. Dig. § 303.*]

4. CONTRACTS (§ 316*)—BREACH—WAIVER.

   Plaintiff, who had contracted to prepare a series of books to be published by defendant, he to receive every six months one-sixth of the net receipts from the combined sales of all books prepared and published, till the entire amount of his compensation of $6 per page was paid, and who was to take out in his name the copyright, assign it to defendant subject to the conditions of the contract, and defend it against all adverse claims, did not waive defendant's breach from causing the copyright of the first book to be taken in the name of his publishing company; he having, while continuing his work, merely left the matter in abeyance awaiting fulfill-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment of defendant's promise to make amends, and having quit when defendant, summoned to act, while expressing willingness, sought to place on plaintiff, the unoffending party, the burden of defending the doubtful copyright, thereby adding a burden beyond the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1480–1492; Dec. Dig. § 316.*]

5. CONTRACTS (§ 312*)—BREACH—CONTRACTS WITH OTHERS.

Plaintiff, who contracted to prepare a series of law books for defendant, did not breach the provision of his contract that he should not write for others, where, without compensation, he merely helped out a sick friend on an article the latter was writing for another publisher; the restriction relating to employment by another.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1279½; Dec. Dig. § 312.*]

6. SPECIFIC PERFORMANCE (§ 87*)—NECESSITY OF PERFORMANCE BY PLAINTIFF.

Plaintiff, who contracted to prepare a series of law books to be published by defendant, the deferred payment of $4 per page to be paid him by his receiving every six months one-sixth of the net receipts from the combined sales of all books prepared and published, and who was to take out the copyright in his own name, and assign it to defendant, subject to the conditions of the contract, having, after preparing one book, ceased work, and refused performance, asserting breach of the contract, which could not be remedied, by defendant taking out the copyright in the name of his publishing company, cannot invoke the interposition of equity to compel defendant to vest in plaintiff a valid copyright of the book, and account for the net profits.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 225; Dec. Dig. § 87.*]

7. EQUITY (§ 41*)—AWARD OF DAMAGES ON DENIAL OF EQUITABLE RELIEF.

Where a court of equity cannot, in view of plaintiff's attitude prior to action, grant the equitable relief asked by him, it cannot award damages in lieu of such relief, to which he is not entitled.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 116, 117; Dec. Dig. § 41.*]

8. APPEAL AND ERROR (§ 184*)—NATURE OF REMEDY—OBJECTIONS BELOW.

Though plaintiff brought an equitable action, when he was entitled to no equitable relief, so that the court could not award damages in lieu of such relief, yet, his remedy being an action at law for breach of contract, and the trial court having afforded him such relief, the judgment will not be disturbed in the absence of objection by defendant to the tribunal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1179–1183; Dec. Dig. § 184.*]

9. CONTRACTS (§ 321*)—BREACH—RIGHT OF RECOVERY.

Though the contract, under which plaintiff was to prepare a series of law books to be published by defendant, provided the deferred payment of $4 per page to be made to plaintiff should be made by his receiving from time to time a certain percentage of the net receipts of all books prepared and published, till he had been fully paid, thus making such payment contingent, yet defendant having breached the contract, by taking out in the name of his publishing company the copyright of the first book, while the contract provided that the copyright of the books should be taken out in plaintiff's name, and assigned by him to defendant, "subject to the conditions of the contract," plaintiff may refuse to go on with the contract, and at once recover his deferred payment on work done, irrespective of what the earnings had been.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1508; Dec. Dig. § 321.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

Action by William L. Clark against John B. West. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 127 App. Div. 912, 111 N. Y. Supp. 1114; 193 N. Y. 349, 86 N. E. 1.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, CARR, and THOMAS, JJ.

H. V. Rutherford, for appellant.

William B. Hale, for respondent.

THOMAS, J.   Clark, a book writer, agreed in writing with West to prepare a "series of text-books for law students on the following subjects, * * * Corporations, Torts, Bailments, Agency, and Pleading and Practice, * * * and also write and prepare such other books for said series as the second party may direct," with authority in West to direct the order of preparation of the books in the series, and to substitute other subjects for any of those named. Clark agreed, among other things, to prepare "at the rate of not less than 125 pages each month," and to deliver to West the manuscript of completed chapters at the end of each month "for the purpose of obtaining advance payments on account of the completed book of which said chapters are parts only"; but it was stipulated:

"Such delivery is in no wise the delivery of the book, entitling the first party to payments as such upon acceptance of same."

Clark further agreed that he would "defend the copyright of the same against all adverse claims," and that "the copyright of all books prepared" by him "shall be taken out in his name, and immediately thereafter assigned by him to the second party, subject to the conditions of this contract." Clark further agreed that after publication of any edition of "said works, and so long as he has an interest in the sales of same," to collect and prepare new cases and other new matters for addition "as often as the second party shall desire to publish a new edition." Clark further grants to West "the sole and exclusive privilege and license of printing, publishing, and selling, or otherwise disposing of, said works and all revisions of the same during the continuance of any copyright or renewals thereof, or his interest in the same, and also the right to use any part of the material in said works in local books, and in monographs, articles, notes, or annotations, or books or other legal topics or on subdivisions of the particular subjects, prior to same becoming the exclusive property of said second party." West agreed that "when the manuscript of an entire work has been all delivered to him, he will proceed to examine the same, and he will accept the same within thirty days after the receipt of the same," or return same for correction.

The contract provides:

"The second party agrees to pay to the first party $2 per page, * * * on each book prepared by the first party under this contract and accepted by the second party, and if said first party abstains from the use of intoxicating liquor and otherwise fulfills his agreements as hereinbefore set forth, he shall be paid an additional $4 per page in manner hereinafter stated. * * * When a completed chapter or completed chapters amounting to not

less than 125 pages, to be delivered to the second party each month are so delivered, the second party shall pay to the first party $2 per page. But he shall not be required to pay more than $250 in any one month prior to the acceptance by him of a completed book. These advance payments are to be made as soon as the completed chapters are delivered as above stated, but if, after such delivery and payment, the manuscript shall not be regarded by the second party as satisfactory, no further payment shall be made until the first party shall have made the same satisfactory to the second party. All payments on account of parts of books are to be treated as payments on account, against books previously completed and accepted. They are for accommodation of first party only. After the publication of any book or books prepared by the first party under this contract, he shall at the end of every six months be entitled to receive, and the second party agrees to pay him, an amount equal to one-sixth of the net receipts from the combined sales of all books which shall have been prepared by the said first party and published by the said second party under this contract, less any and all payments previously made, said first party and all money then due the second party from the first party, until the amount of $6 per page of each book shall have been paid, after which the first party shall have no right, title, or interest in said books or the receipts from the sales thereof. But no accounting shall be made for any copies of said works that may be lost, stolen, or destroyed by fire, or otherwise, or upon any copies disposed of as a means of advertising and pushing the sale of said works, or upon five copies of each edition to be given to the first party. * * * The second party also agrees that if and when he accepts the manuscript of any book prepared by the first party under this contract, he will proceed at once to print and publish the same in such form as he may deem best, and after its publication will advertise and push its sale to the best of his ability, so long as anything may be. due the first party under the terms of this contract."

Clark prepared a general work on Corporations, which was in substitution of the smaller work first contemplated for the students' series, and also 400 pages of Torts, when he refused to do further work under the contract for the reason given that West had permitted his publishing company to take in its name the copyright of Corporations, and refused and was unable to remedy this breach of the contract.

The plaintiff claims that the contract is divisible, so that the first cause of action relating to Corporations is independent of his agreement to prepare other books. The same claim is tendered in support of the second cause of action, which is for conversion of the manuscript of Torts. If this were true, Clark could recover for any failure to pay the $2 per page for Corporations which was published. But Clark did not recover for the $2 per page, as that had been paid, but for the $4 per page in addition, the payment of which was conditioned on his faithful performance of the "other conditions of this contract," and the fulfillment of his agreements, and upon receipt by West of net receipts, one-sixth whereof would measure additional payments to Clark. But the complaint alleges accrued net receipts, and demands judgment for $13,876 and interest, or in the alternative that defendant account, and vest a valid copyright in said treatise on Corporations in the plaintiff, or, in the event that a valid copyright "cannot be, or is not, forthwith vested in the plaintiff," that he have judgment for the sums named. The court directed recovery on Corporations for such amount, which is based entirely on the $4 per page so promised conditionally, without evidence of the receipt of adequate net profits. So the questions as to this first cause of action are: Has it a valid existence? Second, is the recovery justified? The plaintiff

seeks to sustain the first cause of action upon the principal ground, as stated, that the contract is divisible. The defendant asserts that it cannot exist as the contract is entire, and that there is no existing breach of it on the part of West. The plaintiff asserts its divisibility, and the defendant affirms its entirety, as a matter of law (Tipton v. Feitner, 20 N. Y. 423; Central New York Tel. & Tel. Co. v. Averill, 58 Misc. Rep. 59, 110 N. Y. Supp. 276), upon rules of interpretation to which attention will be specifically called.

All rules of interpretation of a contract here involved are aids to one purpose, and that is, to discover the intention of the parties. One element of a contract may be more helpful than another to indicate intention. To certain types of agreements the courts have ascribed greater relative potency, so that, in the absence of other overmastering terms, they by their own force establish intention. But no rule is per se determinative. The intention of the parties fixes the divisibility or entirety of the contract (Tipton v. Feitner, 20 N. Y. 423, 425, 431; Glenn v. Rossler, 156 N. Y. 161, 168, 50 N. E. 785; Wald's Pollock on Contracts [3d Ed.] 320; Slater v. Emerson, 19 How. [U. S.] 224, 15 L. Ed. 626), gathered from its several provisions (Tipton v. Feitner, supra; Toher v. Schaefer, 45 Misc. Rep. 620, 91 N. Y. Supp. 3), and the circumstances surrounding the agreement (State v. Davis, 53 N. J. Law, 144, 147, 20 Atl. 1080). Special tests must yield to overbalancing evidences of intention. Divisibility of subjects and differences in their nature are not conclusive tests. Shinn v. Bodine, 60 Pa. 182, 185, 100 Am. Dec. 560; Wald's Pollock on Contracts, p. 317; Providence Coal Co. v. Coxe Bros. & Co., 19 R. I. 380, 35 Atl. 210. Stipulations that several acts be done at different times are strong in interpretative suggestion of a divisible contract, unless the consideration be entire (Badger v. Titcomb, 15 Pick. [Mass.] 409, 26 Am. Dec. 611), but such terms do not exclude a contrary conclusion (Slater v. Emerson, 19 How. [U. S.] 224, 238, 15 L. Ed. 626). So as to stipulations to deliver articles varying in size, price, and at different times (Catlin v. Tobias, 26 N. Y. 217, 84 Am. Dec. 183, approved People ex rel. Cossey v. Grout, 179 N. Y. 417, 72 N. E. 464), and so as to modes of measuring the price, as by the bushel, ton, or pound (Shinn v. Bodine, 60 Pa. 185, 100 Am. Dec. 560), although, in the absence of stronger adverse evidences of intention, sales of different articles deliverable in installments are divisible (Pope v. Porter, 102 N. Y. 366, 7 N. E. 304; Pierson v. Crooks, 115 N. Y. 539, 555, 22 N. E. 349, 12 Am. St. Rep. 831), but the court recognized the supremacy of intention.

The sale of several distinct items of property is entire when the promise by the purchaser is conditioned on entire performance by the vendor; but, in the absence of such condition, where the price to be paid is apportioned to each item in terms or by implication of law, the contract is divisible. Ming v. Corbin, 142 N. Y. 334, 341, 343, 37 N. E. 105, 107. But the court sought the intention of the parties and sustained a finding of the jury that it was divisible. Indeed, the opinion states:

"Whether a contract is entire or to be taken distributively is often a question of intention and frequently one of fact."

So provision for periodic payments permits recovery for the part performed when entire performance is not contemplated. Walsh v. New York & Kentucky Co., 88 App. Div. 477, 85 N. Y. Supp. 83; Tipton v. Feitner, 20 N. Y. 426. It is a rule of construction that, if a day be appointed for the payment of money, and that day is to arrive, or may arrive, before the time when the consideration for money is to be performed, the performance of the consideration is not a condition precedent to the right to recover the money. Meriden Britannia Co. v. Zingsen, 48 N. Y. 247, 8 Am. Rep. 549, citing Morris v. Sliter, 1 Denio, 59, "where intention controlled"; De Kay v. Bliss, 120 N. Y. 91, 24 N. E. 300; Smith v. Betts, 16 How. Prac. 251; Front St., etc., R. R. Co. v. Butler, 50 Cal. 574, 577; Skillman Hardware Co. v. Davis, 53 N. J. Law, 144, 20 Atl. 1080; Central Appalachian Co. v. Buchanan, 73 Fed. 1006, 20 C. C. A. 33. This is only saying that the dependence or independence of covenants may be determined by the order of time in which, by the terms and meaning of the contract, their performance is required. Grant v. Johnson, 5 N. Y. 247; Glenn v. Rossler, 156 N. Y. 161, 167, 50 N. E. 785; Gail v. Gail, 127 App. Div. 892, 898, 112 N. Y. Supp. 96. But such rules "yield to evidence of different intention." Wald's Pollock on Contracts, 323; Roberts v. Brett, 25 L. J. N. S. C. P. 286.

It is a restatement of what has been said that, if a covenant by one party goes to the whole consideration of a promise by the other party, its performance is a condition precedent to the right to enforce the promise; but, if it goes only to a part of the consideration, the promise of the other party may be enforced without performance of the covenant, the other party being left to his right to recover damages for nonperformance of the covenant. Mill Dam Foundery v. Hovey, 21 Pick. (Mass.) 417, 439; Boyle v. Guysinger, 12 Ind. 273; Coe v. Bradley, 5 Fed. Cas. 1170, No. 2,941; Water Lot Co. v. Leonard, 30 Ga. 573; Dey v. Dox, 9 Wend. (N. Y.) 129, 24 Am. Dec. 137. So it is a general rule that a contract is entire when it appears that one party relies upon the performance by the other party of his promises, and divisible when it appears that the reliance was on the promise of the other party, and a remedy to recover damages. Roberts v. Brett, 25 L. J. C. P. 280.

With these rules in mind, the contract may be examined. The contract mainly provides for a series of books, that is, for several books, prepared in succession. By the contract the books in the series are connected by their appointment to the use of law students, to which purpose, plaintiff claims, Corporations, which was substituted for a simpler work on that subject, is not specially adapted. But he has invoked for Corporations all the benefits of the contract. The books were to be made one by one. An advance monthly payment of $2 per page was stipulated, but no acceptance resulted therefrom, nor was that due until 30 days after the delivery of the manuscript of an entire work. But when so accepted it became the property of West according to the terms of the contract. But one or more books dissociated from others in the series afforded neither party the full benefit of the contract. Clark was insured advance payment at $2 per page for

what he did, but the further payment was conditional. Clark might finish a particular book and the same be accepted and published, but the $4 per page, or any part thereof, might never accrue. So West on his part might receive and publish the first work, without any sales or without any net profits. To avoid this hazard of loss of benefit to either or both, the books were made interdependent. Let this be illustrated. The contract called specifically for five works, Corporations, Torts, Bailments, Agency, and Pleading. It may be assumed that the books would have some value as parts of a series. But, passing that, it is readily seen that Clark was privileged to look, for his compensation of $4 per page for any one of the works, for instance, Corporations, to the net receipts of Corporations, and any one and all the other works published. To this all books published or to be published were pledged. And so for the second, third, fourth, or fifth book, not only its net receipts, but also those of all prior and subsequent works in esse or in futuro, were pledged. It is true that Corporations might earn such an improbably large net sum that one-sixth thereof would equal the large amount found for the plaintiff at the rate of $4 per page, but that was not Clark's sole reliance. The first and following six months would come, and the accounting might show no, or insufficient, net profits for contribution to, or discharge of, Clark's additional compensation. But the "combined sales of all books" prepared and published were subjects of the accounting, and thereby book was added to book for Clark's security. But Clark is not the sole object of concern. The books were all united in a joint venture for West's benefit, if benefit should come. But the very fact that he had agreed to take and publish five works placed upon him the hazard of profit or loss from such publication, and he was entitled to the five works upon which he had cast the chance of a fortunate issue. Clark's position is that he could prepare one and stop, or two, three, or four, and stop. But could West accept one, two, three, or four, and stop? West could not stop with any less than five, because he had agreed to accept five, and Clark was entitled not only to $2 per page for the five works, but also to the opportunity to receive an additional $4 per page. But, if Clark was entitled to have net earnings of five books for his profit and payment, West was entitled to have the net earnings of five books to gain a sum to make such payments, and return such profits to Clark and himself. Cadwell v. Blake, 6 Gray (Mass.) 402.

All the books were by the terms of the contract held in one leash, and were never liberated, until all books had been published and Clark had received his full $4 per page additional for every page in all five works, and to this end West bound himself to publish and push the sale of a book "so long as anything may be due" Clark "under the terms of this contract." If Clark received the $4 per page for Corporations, such payment by the very words of the contract entered as a debit in the next accounting, and the net earnings of Corporations thereafter, as before, entered into the account for the purpose of compensating Clark for other works prepared and published. The plaintiff may not regard the contract as for his benefit alone. Even so, it would be entire. But if Clark may draw out, when he so wills, West may be left

with only a fragment of his series, and an undertaking, whose prosperity contractually rests on five works, is curtailed as Clark wishes. The payments are not at fixed periods. The accounting is periodic. Part payment of $2 per page as an advance is intended to precede the whole performance of the contract, and becomes final upon acceptance of the books. But no period is fixed for the greater payment of $4 per page. When the contract was made, it could not be known when it would be paid, or whether it would ever be paid, nor could that be known until the last book had been exploited. Of course, each work is a separate item, but that is consistent with an entire contract, although aiding divisibility. The intention governs. Does Clark intend to prepare five books or none? Does he intend that West may take one book, and stop? Does West intend to contract for five books and no less? Does he intend to contract that he may stop publication after less than five books shall have been published? Does he intend that Clark may stop short of the five? I think that neither party had such intention. But the learned counsel for the plaintiff in his brief says:

"A day was fixed for the payments on account of Corporations. That day was to arrive, or might arrive, and actually did arrive, before the time for the completion of Torts. Therefore, the completion of Torts is not a condition precedent to plaintiff's right to recover the stipulated payments for Corporations."

Did the day of payment arrive? When was it? When the $2 was paid? If so, nothing now is due. Was it on the day of accounting? Payment would only then be due in whole or in part, if the net earnings so showed. The nearest plaintiff is to this rule is the statement that for Clark the day for payment of the $4 might arrive at some time before all the books are published. But West did not promise to pay before "the time when the consideration" for the money "is performed." He promised to pay in full for published books, when Clark had so far performed as to any and all publications that the net profits of the enterprise to the time of accounting would, if divided in a fixed ratio, give Clark additional compensation up to $4 per page. But Clark was the very initial source of such earning, and his services, not on one book, but on multiplied books, were his stipulated contribution to the fulfillment of the conditions that made payment possible. Weed v. Clogston, 98 Mass. 147. When that indefinite period for payment came, Clark was entitled to his maximum compensation for any and all books prepared and published, but not, thereupon, to abandon the contract and refuse to do the acts that were the consideration for the money.

As I understand the plaintiff's position, it is that, after preparing one book, he could abandon the contract, recover payment therefor, and leave West to recoup his damages for the unperformed part. Isaacs v. New York Plaster Works, 67 N. Y. 124; Capron v. Thompson, 86 N. Y. 418; De Kay v. Bliss, 120 N. Y. 91, 24 N. E. 300. Such splitting of the contract is foreign to the intention and language of the contract and utterly subversive of the contemplated advantages of the parties. But the plaintiff may recover upon the contract, although entire, if the defendant by his breach defeated its beneficial fulfillment by the former. The contract provides that the copyright should be

taken out by the plaintiff, defended by him, and assigned to the defendant "subject to the conditions of this contract." The defendant caused the copyright of the three volumes on Corporations to be taken in the name of his publishing company. Clark knew immediately after each volume was issued of this breach of the contract. Indeed, he knew of the application for the copyright of volume 3. His evidence is that after discovery of the unwarranted copyrighting of volume 1 he wrote West in angry protestation. He states that after volume 2 was issued he wrote again. Neither letter is produced. While the application for volume 3 was pending, a produced letter shows that he insisted upon compliance with the contract. To this letter West replied on May 6, 1902, acknowledging unintentional departure from the contract, and offering to have a change made in the application, suggesting, however, reasons for not doing so, means of correcting harm flowing from the error, and asking that he be advised at once if Clark was not satisfied. Clark replied on May 12th:

"In regard to the question of copyright of Corporations, if my contract were with any one but you, I would want the same to be in my name, and assigned, so that the assignment 'subject to the conditions of the contract' would protect me against bona fide purchasers, as I think would be in case under the act of Congress relating to registration of such assignments. But I am perfectly satisfied to leave the matter to you. You can give me a paper after the book is published showing exactly what my rights are."

May 20th West replied:

"In the matter of the copyright of 'Corporations' I am ready to execute or have executed any paper that is necessary for the protection of your rights. We will, if you please, discuss this matter at our next interview unless you previously prepare such a paper as you desire."

So the matter remained until May, 1903. Meantime Clark completed Corporations, volume 3, and the same was published. He began on January 1, 1903, the work on Torts, and continued to about May 2, 1903, when he had completed 400 pages. On April 26, 1903, as Clark testifies, he demanded an assignment of the copyright on Corporations, which West refused, but the latter offered him a bond to protect him. On May 2d Clark wrote that he had been advised that the copyright was irremediably void, and declined to continue under the contract, but expressed willingness to continue Torts under a new contract. On May 7th West replied that he had legal advice that the copyright was valid, that he "was prepared to meet any attack upon said copyright, and, as provided in our contract, you will, of course, also protect same," and adding:

"I am surprised that you should at this time raise any question regarding the copyrighting of 'Corporations' in the name of Keefe-Davidson Company, in view of the language of your letter under date of May 12, 1902, 'I am perfectly satisfied to leave the matter to you. You can give me a paper after the book is published, showing exactly what my rights are.' I have always been willing to give such a paper. Your only objection has been that the rights of some bona fide purchaser might intervene, and any danger of that kind would, I imagine, be better provided against by bond or other security, than by stopping work on 'Torts' and going to work for other parties."

The next day Clark entered the employment of another company. It is considered that Clark had a bare technical right to stop work. It

was proper that Clark should apply for and procure the copyright in his name, and so the contract provided. He obligated himself to defend it, and he was entitled to condition the assignment upon West's performance of the contract. West disordered these rights and obligations, later acknowledged his error, and offered to make amends by assignment and reassignments of the copyright. It was to this letter and its contained suggestions that Clark replied expressing his satisfaction "to leave the matter to you," to which West replied, "I am ready to execute or have executed any paper that is necessary for the protection of your rights." When, however, Clark demanded protection, West expressed his willingness to carry out his earlier offer, but suggested a bond, to which he coupled a demand that Clark should protect the copyright. How could, and why should, Clark protect the copyright illegally taken out? This added not only a burden beyond the contract, but, perchance, impossible to sustain. I do not think that the plaintiff waived the breach. The matter was left in abeyance awaiting West's promise to make amends pursuant to his letter. But when summoned to act, West expressed willingness, but sought to place the burden of defending a doubtful copyright upon Clark, the unoffending party. I think that Clark did not absolutely waive his right by awaiting West's promise to correct his error. But defendant charges that Clark agreed not to write for others and did write for another company an article on Burglary. Plaintiff makes several answers to this accusation; among others, that the work was done without remuneration, to help out a sick friend. I conclude that Clark's act is not within the spirit or letter of the contract. The restriction related to employment by another. The plaintiff merely succored a sick friend. That is too trivial and remote to be declared by the court a breach. But the relief sought by Clark and afforded by the court is not warranted in an action in equity. The interposition of the court in equity is invoked upon the theory that the defendant should be compelled to vest a valid copyright in him, and account for the net profits, or, in lieu of vesting the copyright in him, West should pay a sum of money, and this last has been directed on the theory of a recovery upon quantum meruit, or for the value of the contract, as in an action at law. But the very reason given by plaintiff in his letter of May 2, 1903, for not proceeding with the work was that the copyright was void, and that "there is no way in which this can be remedied." He wrote:

"Even an assignment from the Keefe-Davidson Law Book Company (the publishing company) to me, for which I asked you when I saw you on Sunday last, and which you said you are not willing to give, can do me no good now. I am therefore in the position of having nothing to secure to me my interest in this work, which amounts to about thirteen thousand dollars, except your own personal liability, with all the risk of your death and subsequent complications. If the copyright had been taken out in my name, as our contract expressly provided, and then assigned to you, subject to the terms of our contract, things would be very different. Furthermore, this complication, which, owing to my ignorance of the copyright law, I did not know of until last Saturday, renders it impossible in the very nature of things for you to perform the contract as to any future books I might write under the contract. The contract makes the sales of every book I might write liable to contribute to paying me what might be coming to me on every other book. As the book on Corporations is not validly copyrighted, or, if by chance it is copyrighted, as

I have not the lien on the book which I was entitled to under the contract, I may not get the benefit from that book in helping me to pay royalties on other books. In view of this state of matters, I am not willing to write another book under that contract. If you wish to have me write any other books, it will have to be under another contract."

By what justification, then, does Clark come into a court of equity asking relief? He refused to go on with the contract upon the very ground that West could do nothing to restore him to his rightful status. He did not rescind the contract, nor does he seek to do so in this action, nor has he made any tender that would entitle him to rescission. He does not in his complaint ask for specific performance of the entire contract. He is not entitled to specific performance, as he did not at any time tender performance on his part, but distinctly refused performance. He asserted breach of the contract, and the impossibility of curing it. The plaintiff in no way commends himself to a court of equity. Hence the court could not, in view of Clark's attitude to the contract, grant such relief, and, if it could not grant it, it could not award damages in lieu of relief to which the plaintiff was not entitled. Clark's remedy was an action at law for breach of contract, and such remedy the trial court has afforded him, and I find no objection to the tribunal on the part of the defendant. By what way the judgment was reached remains to be considered. The complaint in the first cause of action does not state the value of plaintiff's services nor the value of his manuscript, but does allege "the reasonable value and contract price of the copyright of said treatise on Corporations" to be $20,814. In the second cause of action, which relates to Torts, the "reasonable value of plaintiff's said manuscript and literary property" is stated. The court found that the "contract price of the copyright of said treatise on Corporations was and is $6 per printed page of the standard size, and amounting in all to the sum of $20,814," and "that the reasonable value of plaintiff's said manuscripts in Torts delivered to the defendant amounting to 400 pages, and the literary property therein was and is the sum of $2,400." The court concluded:

"(5) That the provisions of said contract providing for the payment by defendant of said sum of $6 per page only when and as sales of the book shall have been made in sufficient amount constitute a condition for the benefit of defendant which he might waive. (6) That defendant, by causing the copyright of Corporations to be taken out in the name of the Keefe-Davidson Company, waived the condition that said $6 per page should be payable only when and as sufficient sales should have been made, and defendant became at once liable to plaintiff for the full amount of $6 per page of Corporations, less all amounts previously paid or advanced to plaintiff. * * * (10) That the contract between the parties is severable as to each of the different books specified therein, so that full performance by the plaintiff in respect to the first book, Corporations, entitles him to the stipulated compensation therefor. (11) That plaintiff's right to recover under the contract the stipulated compensation for the work on Corporations does not depend upon defendant's breach in causing the copyright of Corporations to be entered in the name of Keefe-Davidson Law Book Company."

A judgment for $13,876 with interest upon the first cause of action is directed, and for $1,600 damages upon the second cause of action. There is evidence to sustain the finding as to Torts, for the plaintiff testified on cross-examination that his services on that work were

worth $6 per day. This evidence was not given respecting Corporations, and reflects faintly, if at all, the value of plaintiff's services respecting that work. But the complaint and finding as to Corporations do not touch the value of plaintiff's services thereon. The complaint relates to the value of the copyright, and the finding to the contract price. But as the contract is made a part of the complaint, the finding and pleading may be reconciled. This finding must rest on the terms of the contract. But the contract fixes the price at an "advance payment of $2 per page; the balance being contingent, among other things, upon publication of the books and returns from sales." Clark v. West, 193 N. Y. 349, 86 N. E. 1.

Plaintiff contends that defendant's breach converted a contingent into an absolute obligation to pay. It has been concluded that the defendant was guilty of a breach, and that plaintiff could refuse to go on with the work. Defendant's breach made performance impossible according to the terms of the contract. The additional $4 per page could not be earned as the contract contemplated, because the defendant had disorganized the contractual rights. Hence the plaintiff could sue for the additional $4 per page, and defendant could not gainsay the demand by the plea that the works contemplated in the contract had not earned the additional amount or any part thereof. The defendant could not violate his contract and insist that plaintiff fulfill to earn his compensation. The arrangement was not to give the defendant credit. It was to let the earnings of the books measure the payment. But such earnings were to be in accordance with the contract fulfilled and not broken by defendant. When a party breaks his contract in a respect that affects the time or manner of his promised payment, he must pay irrespective of the advantage secured to him. Jones v. Judd, 4 N. Y. 412, 414; Nichols v. Scranton Steel Co., 137 N. Y. 471, 33 N. E. 561; Kokomo Strawboard Co. v. Inman, 134 N. Y. 92, 31 N. E. 248. If this be true with reference to mere occasions of payment, it should be equally true respecting a payment depending upon the promisor earning from the sale of the product of the promisee's services. The plaintiff was not obliged to fulfill on his part a contract broken on the defendant's part before he could recover the compensation which the contract contemplated. Wharton & Co. v. Winch, 140 N. Y. 287, 35 N. E. 589. The defendant took unconditionally a copyright which he by right could take only conditionally. A party entitled to earn a sum payable before compulsory payment may not distort the contract by such breach, and thereupon insist that the requisite sum has not been earned because the other party has refused to continue the work. What the offending party defeats should in this instance be regarded as done.

The judgment should be affirmed, with costs. All concur.