(91 Misc. Rep. 405)

ROSENTHAL PAPER CO. v. NATIONAL FOLDING BOX & PAPER CO.

(City Court of New York, Special Term. July, 1915.)

1. ASSIGNMENTS ⟜18—CONTRACTS ASSIGNABLE.
    An executory contract, which is not necessarily personal in its character, and which can, consistently with the rights of the adverse party, be executed by the assignee, is ordinarily assignable, in the absence of a provision to the contrary; but a contract imposing a personal liability, or establishing a relation of personal confidence, is not assignable.
    [Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 25-27; Dec. Dig. ⟜18.]

2. PATENTS ⟜213—CONTRACT—ASSIGNABILITY.
    S. agreed in writing that defendant should for five years have the exclusive right to manufacture and sell within a certain territory paper packing boxes protected by patents. The contract, after providing for payment of royalties, provided that payment for the right to manufacture and sell should not be less than $500 each for every year during the life of the contract. S. agreed that he would not during such time sell within such territory, and that he would "faithfully protect said letters patent from * * * substantial infringements." The contract did not expressly in words or substance run to the parties, their heirs, or legal representatives, nor did it expressly provide that it should not be assignable. No personal services were required of S. under the contract, and it did not appear that he had any technical knowledge of the invention, or any scientific ability, or that he had any superior financial strength, or that there was any intimate or confidential relation existing between him and defendant. Held, that the contract was assignable.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 315-320; Dec. Dig. ⟜213.]

3. PATENTS ⟜212—BREACH OF CONTRACT—ASSIGNMENT—RELEASE FROM PAYMENTS.
    Where S. assigned the patent on which such contract was based, he divested himself of power to perform the covenant to "faithfully protect" defendant, and thereby deprived defendant of the means of compelling performance of the covenant guaranteeing such protection; and since the contract, notwithstanding the provision for periodic payments, was an entire one, such assignment constituted a breach of covenant, which not only released defendant from payments accruing before, but from those accruing after, the breach.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 312-314; Dec. Dig. ⟜212.]

Action by the Rosenthal Paper Company against the National Folding Box & Paper Company. On motion to set aside verdict for plaintiff. Motion granted, and complaint dismissed.

Joseph A. Arnold, of New York City, for plaintiff.
Walter D. Edmonds, of New York City (Franklin M. Clark, of New York City, of counsel), for defendant.

---

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ALLEN, J. On March 1, 1909, Isse Seligstein entered into a contract with the defendant, whereby he granted to the defendant, for the period of five years from that date, the "exclusive right to manufacture and sell," within the New England states and other defined territory, paper packing boxes which were protected by letters patent of the United States issued to the inventor thereof and by him assigned to Seligstein. The contract provided that the defendant would pay to Seligstein a royalty of $1 per thousand boxes "up to an average daily sale of 20,000 boxes per day," and of 75 cents per thousand for all boxes sold by it in excess of that number; that "settlement for royalties shall be made every 90 days, covering sales for the preceding 3 months," and that the payment by the defendant to Seligstein "for the right to manufacture and sell boxes under said letters patent shall not be less than the sum of $500 for each and every year during the life of this contract." By the contract Seligstein agreed that he would not, during the life of the contract, sell within the defined territory any box manufactured under the said letters patent, or any other box of a similar nature, or any rights for a similar box "to any one for the territory heretofore described," and that he would "faithfully protect said letters patent from any and all substantial infringements of said letters patent." The contract did not expressly, in words or substance, run to the parties to it and their assigns or legal representatives; nor did it expressly provide that it should not be assigned by them; nor did it expressly require Seligstein to do anything more than as above stated.

On January 22, 1912, Seligstein assigned to the plaintiff the contract, together with all of his title to the patent; but the defendant, which continued to make payments of royalties to Seligstein until the end of the period of the contract, did not have knowledge of such assignment until after the period of the contract had expired. The defendant claimed that the patent had been substantially infringed in the defined territory during the period covered by the contract; and it was conceded that, although it called Seligstein's attention to such infringement, he did not do anything to protect the patent. The defendant duly paid all of the stipulated royalty accruing upon the boxes sold by it during the period of the contract, which, in the aggregate, amounted to $917.79; and this action was brought to recover $1,582.-21 as the difference between this sum and the total guaranteed minimum royalty of $2,500 for the five years covered by the contract.

Upon the trial the defendant moved, at the close of the plaintiff's case, and again at the close of the whole case, to dismiss the complaint upon the grounds: First, the contract of license was not assignable, and the assignment thereof did not, therefore, vest any rights thereunder in the plaintiff; and second, by assigning the patent Seligstein placed it beyond his power to perform his covenant to faithfully protect the patent against substantial infringements, and thereby released the defendant from its obligations under the contract.

In order that the verdict of the jury might be taken, and that the possible necessity of a new trial might be dispensed with, this motion

was denied, with the reservation, however, that, if the verdict were against the defendant, these grounds would be given further consideration upon a motion for a new trial. The jury, upon the issues submitted to it as to whether the patent had been substantially infringed, and, if so, whether the defendant had waived its right to have Seligstein protect the patent, found a verdict for the plaintiff for the full amount of its claim and interest thereon, making a total of $1,840.73. Consequently, while in form this is a motion to set aside the verdict and for a new trial, it is substantially, in view of the ruling made, a motion, arising solely upon questions of law, to dismiss the complaint, made at the close of the plaintiff's case; and it will be largely so considered, independently of any inferences based upon the new situation brought about by the verdict.

[1] The first question presented for consideration is whether the contract of license was assignable. Under the ancient common law choses in action, excepting negotiable instruments, were not assignable (Greenby v. Wilcocks, 2 Johns. 1, 3 Am. Dec. 379; Bird v. Caritat, 2 Johns. 342, 3 Am. Dec. 433; Thallhimer v. Brinckerhoff, 3 Cow. 623, 15 Am. Dec. 308), except by or to the soverign (2 Black. Com. 442; 2 Story Eq. Juris. § 1039; United States v. Buford, 3 Pet. 12, 7 L. Ed. 585; United States v. White, 2 Hill, 59, 37 Am. Dec. 374), without the assent of the debtor and his promise to pay the assignee, in which case he could be held upon his new promises (Tierman v. Jackson, 5 Pet. 580, 8 L. Ed. 234). This rule was founded upon the belief that the permitting of assignments of causes of action would encourage litigation (2 Black. Com. 442), and promote champerty and maintenance (2 Black. Com. 135), and enable the strong to oppress the weak (Thallhimer v. Brinckerhoff, 3 Cow. 623, 15 Am. Dec. 308). The rigor of the common law has, however, been so far relaxed that it has become a general rule that an executory contract, which is not necessarily personal in its character, and which can, consistently with the rights and interests of the adverse party, be executed by the assignee, and which does not contain a provision to the contrary, is assignable (Devlin v. Mayor, 63 N. Y. 8; New England Iron Co. v. Gilbert El. R. Co., 91 N. Y. 153; Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N. Y. 209, 31 N. E. 1018: Francisco v. Smith, 143 N. Y. 488, 38 N. E. 980; Vandegrift v. Cowles Engineering Co, 161 N. Y. 435, 55 N. E. 941, 48 L. R. A. 685; New York Bank Note Co. v. Hamilton Bank Note Co., 180 N. Y. 280, 73 N. E. 48), notwithstanding the fact that it has been held that a person has a right to say with whom he will deal and that he cannot have another thrust upon him without his consent (Consumers' Ice Co. v. Webster Son & Co., 32 App. Div. 592, 53 N. Y. Supp. 56; Barcus v. Dorries, 64 App. Div. 109, 71 N. Y. Supp. 695; Kling v. Irving Nat. Bank, 160 N. Y. 698, 55 N. E. 1096; Boulton v. Jones, 2 H. & N. 564; Boston Ice Co. v. Porter Smelting Co., 123 Mass. 28, 25 Am. Rep. 9; Arkansas Co. v. Belden, 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246). If, however, a contract impose a personal liability or establish a relation of personal confidence it is not assignable (Arkansas Smelting Co. v.

Belden Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246); and the test of assignability is whether it would pass to the executor or administrator of a decedent (Zabriskie v. Smith, 13 N. Y. 322, 64 Am. Dec. 551; Devlin v. Mayor, 63 N. Y. 8).

[2] Construing the contract of license between Seligstein and the defendant in the light of these principles, I think that it was assignable. It is to be observed that Seligstein was not the inventor, and that no personal services were required of him under the contract. Neither does it appear that he had any technical knowledge of the invention, or any general scientific ability. If he had been the inventor, these qualities might be inferred. Furthermore, it does not appear that he had any superior financial strength, or that there was any intimate or confidential relation existing between him and the defendant. The presence of any of these lacking elements would present a situation warranting a different conclusion; but, upon the situation as actually presented, I do not see any justification for holding that the contract of license was not assignable. The only suggestion of a personal relation between Seligstein and the defendant is Seligstein's covenant to "faithfully protect" the patent against infringements; but even that did not relate to him so much in his strictly personal capacity as in his capacity as the owner of the patent, and, upon the facts presented, it may be presumed that that obligation to protect the patent could have been assumed and discharged by whoever might have chanced to own it quite as well as by Seligstein, for protecting a patent against infringement consists largely in employing counsel to invoke the aid of a District Court of the United States by way of a suit for an injunction and an accounting, which, presumably, can be done by any ordinary person having the requisite financial ability to meet the expenses incidental to such a suit.

I am speaking now simply of the question of the assignability of the contract; and, in my opinion, the fact, as is hereinafter pointed out, that Seligstein could not place the assignee thereof in a position to carry it out without violating his obligation thereunder to the defendant does not impair its assignability, for, even after the assignment of the contract, Seligstein remained liable to the defendant in an action for damages upon his covenant to protect the patent, and the plaintiff never became liable to the defendant upon such covenant. In other words, as I will endeavor subsequently to show, the important thing to the defendant was the retention by Seligstein of possession of the patent rather than of the contract; and so long as Seligstein held the patent the defendant could enforce its rights against him under the contract, irrespective of who held the latter.

[3] The next question to be considered is whether Seligstein, by assigning the patent, released the defendant from its obligations under the contract of license. Where one party to a contract, prior to a default by the other party, put it out of his power to perform, the other party is thereby relieved from the contract (Delamater v. Miller, 1 Cow. 75, 13 Am. Dec. 512; Crist v. Armour, 34 Barb. 378; Hawley v. Keeler, 53 N. Y. 114; Woolner v. Hill, 93 N. Y. 576; Union Ins. Co. v. Central Trust Co., 157 N. Y. 633, 52 N. E. 671, 44 L. R. A.

227; Wilfley v. New Standard C. Co., 164 Fed. 421, 90 C. C. A. 543; Lovell v. St. Louis Mut. Life Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423); and I think that was the effect of Seligstein's act in assigning the patent to which the contract of license upon which this action was brought relates, for, in doing so, he divested himself of all title to the patent and thereby deprived himself of the power of performing his covenant to "faithfully protect" it against infringements, and consequently thereby deprived the defendant of the means of compelling him to perform such covenant. By this act Seligstein, in my opinion, violated his contract with the defendant just as effectively as if he had expressly renounced his liability under it prior to its expiration; and in that event there is no question but that the defendant could have immediately sued for the breach. Windmuller v. Pope, 107 N. Y. 674, 14 N. E. 436; Ferris v. Spooner, 102 N. Y. 10, 5 N. E. 773; Hochester v. De La Tour, 2 E. & B. 678; Frost v. Knight, L. R. 7 Exch. 111. It cannot be said that the defendant acquiesced in and waived this breach by Seligstein, for it did not know of it until the contract had expired by limitation. A party cannot waive an act of which he has no knowledge, unless the circumstances be such as to impute knowledge to him, which is not the case here. While, in assigning the contract of license, Seligstein simultaneously also assigned to the plaintiff the patent and thereby vested it with the legal power to protect the patent, this was manifestly for the benefit of himself and the plaintiff, rather than of the defendant.

Bearing in mind the character of business contemplated by the contract of license, namely, that the value of the license to the defendant consisted in the fact that it conferred a monopoly, that the patented article was new and could be rendered of commercial value only through the expenditure of money to bring it to the attention of the trade, and that the defendant's damages through the loss of business resulting from Seligstein's failure to protect the patent would be indefinite and difficult, if not quite impossible, of proof, I think that it may be presumed that the defendant relied, and that it had a right to rely, in entering into the contract, upon Seligstein's covenant to protect the patent against infringements. The defendant had a right, not only to have Seligstein perform his covenant to protect the patent when the occasion therefor might arise, but also to a maintenance of the relation established by the contract at all times during its term. From its standpoint, the right to the continuing monopoly was the gist of the whole contract.

It is no answer to say that, notwithstanding the assignment of the contract and patent, Seligstein still remained liable in damages to the defendant for any failure on his part to protect the patent; for, in the first place, it is quite likely that, owing to the nature of the new business contemplated by the contract, the defendant could not prove adequate damages, and, in the second place, it had a right not to be required to assume the risk of Seligstein's solvency in the protection of its rights. It had a right to have Seligstein make good his covenant to "faithfully protect" the patent against "substantial infringements," and, if he did not do so, to compel him to do so by

resort to a suit in equity for specific performance. After Seligstein had parted with all interest in, and consequently with all control over, the patent, such a suit would be an idle ceremony. This was the most effective means at the defendant's disposal of protecting its rights under the contract; and by the assignment of the patent it was completely deprived of this remedy. Neither is it any answer to say that in divesting himself of the power to protect the patent he vested the plaintiff with the power to do so, and that the plaintiff *could* discharge this obligation quite as well as himself; for that power in the plaintiff was, legally speaking, worthless to the defendant, since, not having any promise from the plaintiff to protect the patent, the defendant could not enforce the exercise of such power. A merely latent advantage depending for its accomplishment upon the possible generosity of another cannot, of course, be made the basis of adjusting legal rights.

The situation of the defendant would have been improved if it could have done for its own protection what Seligstein covenanted to do, but rendered himself powerless to do; but it was not. Its right under the contract having been only to "manufacture and sell," and not also to use, the contract conferred a mere license; and it could not, therefore, maintain a suit in equity to enjoin infringements of the patent. Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504; Hayward v. Andrews, 106 U. S. 673, 1 Sup. Ct. 544, 27 L. Ed. 271; Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923. Consequently, about the only rights which the defendant had left under the contract were to spend its money in developing a business upon the patented article, to pay royalties, and to sue Seligstein for damages, in case it sustained any through his default, without the means of protecting itself in the enjoyment of the monopoly constituting the basis of these expenditures.

The plaintiff urges that, since the defendant continued to manufacture under the license during the whole of the term thereof, it is liable for the residue of royalties, irrespective of other considerations in the case. Generally speaking, so long as a licensee thus avails himself of the benefits of the license, he is liable for the royalty thereby imposed (Skidmore v. Fahy's Watch Case Co., 28 App. Div. 94, 50 N. Y. Supp. 1016; Skinner v. Wood, 140 N. Y. 217, 35 N. E. 491, 37 Am. St. Rep. 540; Jarecki v. Hays, 161 Pa. 613, 29 Atl. 118; Genese v. Mulford, 231 Pa. 80, 79 Atl. 932); but I do not think that rule is applicable where, as here, the licensee did not know, until after the end of the contract period, that the licensor had violated the contract by putting it out of his power to perform, especially where, as here, the licensee has paid all of the pro rata royalties which accrued as a result of its continuing to manufacture.

The plaintiff contends that, in any event, it is entitled to the residue of the minimum royalty which accrued prior to the assignment of the patent, which, with interest, amounts to $521.69. I do not agree with the contention of the defendant that, assuming Seligstein kept his part of the agreement, no minimum royalties become payable until the end of the five-year period of the license. The contract provided

for the payment of a minimum royalty of $500 "for each and every year during the life of the contract"; and I think this meant that at least $500 was to be paid for each period of one year, irrespective of what had previously been paid, or of what might become payable during any subsequent year. The difficulty, however, which I find in subscribing to the plaintiff's view in this respect, is that I think the contract was entire, notwithstanding the provision for periodic payments. The general rule is that a contract is held to be entire when it appears that one party relies upon the performance by the other party of his promise, and divisible when it appears that the reliance was upon the promise of the other party and a remedy to recover damages. Clark v. West, 137 App. Div. 23, 122 N. Y. Supp. 380; affirmed, 201 N. Y. 569, 95 N. E. 1125. As before observed, I think that Seligstein's covenant to "faithfully protect" the patent furnished the defendant a substantial inducement for entering into the contract, and that, from the very nature of the enterprise, it relied upon this covenant being kept, rather than upon an action for damages in case of its breach. The subject of this covenant was of such a nature as to extend to the *whole contract*. In fact, it was the very essence of it; and I think that, consequently, the breach released the defendant from the payments which accrued previously, as well as from those which accrued subsequently, thereto.

The defendant further urges that the burden was upon the plaintiff to affirmatively show performance of the covenant to protect the patent, rather than upon it to show a failure of performance in this regard. This point was not emphasized upon the trial, though the defendant's motions were probably broad enough to cover it. I am inclined to believe that it is right in this contention, and that it was the duty of the plaintiff to show, as a part of its case, either that there had not been any infringement of the patent or, if there had, that the patent had been "faithfully protected either by it or Seligstein." If so, an error was made in submitting the case to the jury upon the theory that the burden was upon the defendant to show that the patent had been infringed. Section 533 of the Code of Civil Procedure provides that, if the allegation of performance of a condition precedent is controverted, the plaintiff must then show performance. The plaintiff alleged that it and Seligstein had duly performed all of the "terms and conditions" of the contract on their part. The allegation was denied, and the plaintiff made no effort to prove it. It, however, sought and obtained an appropriate instruction to the jury as to whether the defendant had waived performance. Having alleged performance, I do not think the plaintiff was entitled to rely upon the defendant's waiver of performance (Beecher v. Schuback, 1 App. Div. 359, 37 N. Y. Supp. 325, affirmed 158 N. Y. 687, 53 N. E. 1123; Ryer v. Prudential Ins. Co., 85 App. Div. 7, 82 N. Y. Supp. 971; Burr v. Union S. & G. Co., 86 App. Div. 545, 83 N. Y. Supp. 756; Garlick v. Metropolitan Life Ins. Co., 109 App. Div. 175, 95 N. Y. Supp. 645); but since the defendant, upon the trial, relied upon the two grounds hereinbefore considered, I base

my decision that the plaintiff cannot recover solely upon the ground that Seligstein violated the contract of license by assigning the patent.

I do not consider or pass upon the question as to whether the verdict was against the weight of the evidence respecting the alleged infringement of the patent.

The motion to set aside the verdict is granted, and the complaint is dismissed.