## Jarecki *v.* Hays et al., Appellants.

*Partnership—Patents—Assignment—Contract.*

By an agreement in writing the owner of a patent granted and sold a one fourth interest in a patent to the "firm of Jarecki, Hays & Co., and unto the heirs and assigns of each of the members composing said firm." The firm was composed of the owner of the patent and three other persons. The contract further provided that the "said firm of Jarecki, Hays & Co., their executors, administrators and assigns" shall pay unto the grantor a certain royalty. *Held*, that the parties to the contract covenanted as individuals to pay the royalties which constituted the purchase price of the several interests; and that when two of them, after the dissolution of the original firm, manufactured under the patents, they were bound to pay the royalties.

*Patents—Royalties—Illegal Patent.*

Until a patent is annulled or adjudged invalid, a licensee receiving its benefits must pay the license fee.

*Patents—Assignment—Exclusive right to manufacture.*

Where the owner of a patent, in consideration of a royalty, assigns to another the exclusive right to manufacture, and subsequently violates his agreement by making a second assignment of an interest in the patent, the assignee under the first assignment is relieved from his implied contract to manufacture and sell the patented article, but is not relieved from the payment of royalties if he continues to manufacture under the patent.

*Patents—Royalties—Interest.*

Where royalties on a patent are due on the first day of each month, interest is allowable on each installment as it becomes due.

Argued April 23, 1894. Appeal, No. 10, July T., 1894, by defendants, John W. Hays and William B. Hays, trading as Hays Manufacturing Company, from decree of C. P. Erie Co., Sept. T., 1890, No. 2, on bill in equity in favor of plaintiff, Frederick Jarecki. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill for account of royalties. Before GUNNISON, P. J.

The master and examiner, Chas. Heydrick, Esq., reported:

"1. That on or prior to May 1, 1878, Frederick Jarecki was the owner of letters patent of the United States, and of the inventions covered thereby, to wit, letters patent No. 181,349, dated August 22, 1876, and reissue thereof No. 7440, dated

December 19, 1876, for 'improvements in cases of shut-off rods and stopcocks for gas and water pipes,' which are in evidence marked exhibit C, and letters patent No. 190,868, for 'improvements in cut-off for gas and water pipes,' exhibit D, and that an application for letters patent was pending and afterward granted August 20, 1878, No. 207,185, for 'improvements in hydrants,' exhibit E.

" 2. That on May 1, 1878, a contract or agreement was made between Frederick Jarecki, of the one part, and John W. Hays, Wm. B. Hays and Stephen J. Law, of the other part, whereby Frederick Jarecki, in consideration of the sum of one dollar and the reservation of certain royalties, granted and sold unto the firm of Jarecki, Hays & Co. and unto the heirs and assigns of each of the members composing said firm, an equal one fourth interest, the sole and exclusive right to manufacture, use and vend as well the said patented articles as the said articles for which applications for patents were pending, and any extension and reissue of same, and any improvements upon said articles which might be made by Frederick Jarecki during the existence of the firm of Jarecki, Hays & Co.

" 3. That at the time of making said contract, on May 1, 1878, the firm of Jarecki, Hays & Co. was composed of Frederick Jarecki, John W. Hays, Wm. B. Hays and Stephen J. Law.

" 4. That during its existence the said firm was to enjoy the sole and exclusive right to manufacture, use and vend the said articles covered by the letters patent, application pending, extensions, reissues and improvements upon the same, and that it did so enjoy such sole and exclusive rights during its existence.

" 5. That on or about June 8, 1885, the firm of Jarecki, Hays & Co. was dissolved by the retiring therefrom of Stephen J. Law; John W. Hays and Wm. B. Hays acquiring his interest in the copartnership in the letters patent described in the contract of May 1, 1878.

" 6. That on June 8, 1885, Frederick Jarecki, John W. Hays and Wm. B. Hays entered into a copartnership by the name of the Jarecki-Hays Co., which was to continue until the 31st day of December, 1886, and so much longer as all the partners should be agreed; the capital stock was the property, estate and effects of the then late firm of Jarecki, Hays & Co., and was subject

to the debts of said firm. Of such capital stock Frederick Jarecki was the owner of an undivided one fourth, and John W. Hays and Wm. B. Hays each the owner of the undivided three eighths; the interests and liabilities of each were in like proportion.

" 7. That under the contract of June 8, 1885, the royalties payable to Jarecki on service boxes, made under letters patent, exhibit C, were reduced from five cents each to two and one half cents each on all made and sold and for which pay was collected.

" 8. That this copartnership was dissolved Jan. 1, 1887, by the retiring therefrom of Frederick Jarecki.

" 9. That the said firms or copartnerships, Jarecki, Hays & Co. and the Jarecki-Hays Co., accounted for and paid to Frederick Jarecki all royalties upon the said patented articles for which they were liable, during the existence of the said firms or copartnerships.

" 10. That on Jan. 1, 1887, the firm of Hays Manufacturing Co. succeeded the Jarecki-Hays Co. and has been continuously in the same business at the same place until the present time, John W. Hays and Wm. B. Hays composing said firm.

" 11. That John W. Hays and Wm. B. Hays, as the Hays Mfg. Co., have continued to manufacture and sell the ' cases for shut-off rods and stopcocks for gas and water pipes ' under letters patent No. 181,349 and reissue No. 7440, exhibit C, called service boxes, and have not accounted for nor paid to Frederick Jarecki any royalties thereon since Jan. 1, 1887, to the present time.

" 12. That the Hays Mfg. Co. has not made any ' washers,' under letters patent No. 190,868, exhibit D, nor any ' hydrants,' under letters patent No. 207,185, exhibit E, since Jan. 1, 1887.

" 13. That John W. Hays and Wm. B. Hays, as Hays Mfg. Co., have made, sold and received pay for 55,495 cases of service boxes, as described in letters patent, exhibit C, since Jan. 1, 1887, and 1500 for which pay has not yet been collected.

" 14. That by the terms of the contract of May 1, 1878, the royalties were due and payable on the first day of each month on all articles made, sold and paid for during the preceding month.

" 15. That there was no contract made between Frederick

Jarecki and the Hays Mfg. Co., concerning any royalties upon any of these patented articles.

" The master finds as matter of law:

" 1. [That the contract of May 1, 1878, is an absolute assignment] [5] by Frederick Jarecki of three fourths of all his interest in the described inventions covered by letters patent and application then pending, specified in the said contract, in equal undivided one fourth interest to John W. Hays, Wm. B. Hays and Stephen J. Law, the heirs and assigns of each of them—the consideration therefor being the sum of one dollar and the payment of certain royalties upon the articles made and sold and for which pay was collected.

" The instrument conveyed to these parties an undivided portion of the entire interest in the patented invention and the monopoly as to every part of the United States; it placed the alienees upon an equality with the alienor and vested in them complete but not exclusive rights and powers as to the invention and monopoly; it is therefore an assignment: Robinson on Patents, vol. 2, page 517 et seq.; Littlefield v. Perry, 21 Wal. 205. The consideration for the assignment of a patent may be in the form of periodic royalties to be paid by the assignee: Littlefield v. Perry, supra.

" The construction of this part of the contract is a comparatively simple matter; the intention of the parties being manifested by the insertion of the words ' and unto the heirs and assigns of each of the parties composing said firm in equal undivided one fourth interest.' Of course that part of the contract by which Frederick Jarecki conveys to himself an undivided one fourth interest is surplusage. It is in the matter of the contractual obligation to pay royalties that difficulty is first experienced. The contract says: ' The firm of Jarecki, Hays & Co., their executors, administrators and assigns, shall pay unto Frederick Jarecki, his legal representatives,' etc. There is no express individual liability to account for royalties. The firm could not have executors or administrators; it might have assigns. The expression is ambiguous, but it must be construed by the preceding context, the grant to ' the firm of Jarecki, Hays & Co., and unto the heirs and assigns of each of the members composing said firm;' and it will be seen that the firm name is used for the individual names collectively and the

expression is perfect, 'the firm of Jarecki, Hays & Co.,' that is 'Frederick Jarecki, John W. Hays, Wm. B. Hays and Stephen J. Law, their executors, administrators and assigns shall pay,' etc. The plural pronoun aids this construction also. This is the legal as well as the equitable rule, to so construe the contract, one part by the other, that the meaning which the parties intended shall be carried into effect.

" Equity will put this construction upon it too, because otherwise Frederick Jarecki will be without a remedy either in law or in equity, for I cannot agree with the learned counsel for the respondents that Frederick Jarecki has a complete and adequate remedy at law. It is entirely clear that the respondents are in no sense of the word infringers, and without a discovery on their part [the complainant could not maintain an action at law to recover these royalties.] [6]

" [Having thus reasoned that the liability to pay these royalties is an individual liability, resultant from the individual conveyance, it follows that the obligation to 'keep accurate accounts of the number of articles made and sold,' etc., is also a personal and individual obligation.] [4]

" The loose and apparently careless manner in which this contract is drawn may be accounted for by the fact that the parties to it are all men of the highest personal character and integrity; enjoying in its fullest degree the implicit confidence of each other, understanding at the time the exact obligations they were assuming, they observed not the strict attention to detail they would have in the case of a stranger.

" The respondents set up as part of their defence that the patent under which these cases are made is invalid and attempted to support it with evidence. The position, however, is untenable; all the authorities are unequivocally to the effect that until a patent is annulled or adjudged invalid, a licensee receiving its benefits must pay the license fees: White v. Lee, 14 Fed. R. 789; Hilsen v. Libby, 44 (S. C.) N. Y. 12; Marston v. Swett, 82 N. Y. 526; Angier v. Eaton, Cole & Burnham Co., 98 Pa. 594.

" Until the United States courts have declared the patent invalid, evidence of its invalidity is not admissible in an action for the price: Elmer v. Pennel, 40 Me. 430. And even though the patent be invalid, royalties on sales are due and collectible

since benefit has accrued to the licensee : White v. Lee ; Marsten v. Sweet, supra.

" Had this position been sound, the evidence offered to support it was clearly incompetent.

" They also set up that Frederick Jarecki, after withdrawing from the firm of Jarecki-Hays Co., licensed the Jarecki Manufacturing Co., a rival concern in the city of Erie, to make these cases under his patent, and assisted in making and selling them, thereby violating the contract on his part and releasing them from liability for royalties ; that he served notice on them to cease the manufacture and sale of this article, as the Jarecki Manufacturing Co. was sole licensee under his patent; that other concerns in the United States were making them ; that they asked the complainant to protect them, and when he declined they made them under a public right, as other concerns were doing. The notice from Mr. Jarecki to the Hays Mfg. Co. above referred to, proved on exhibition to be a letter from his counsel notifying the Hays Mfg. Co. to cease the manufacture and sale of another article, made under letters patent granted to Frederick Jarecki, dated March 29, 1881, and not under any one of the patents described in the contract of May 1, 1878.

" The respondents have failed to establish the invalidity of the patent and the rights of the public in the invention—but under date of Jan. 6, 1887, they advertised themselves as ' successors to Jarecki-Hays Co., manufacturing as specialties,' ' Jarecki's patent extension shut-off box for gas and water,' which is the article described in letters patent, exhibit C, and other articles patented by Jarecki.

" It is not clear when they claim to have begun the manufacture of this article under claim of public right. They deny that they have made any under the contract of May 1, 1878, since Mr. Jarecki withdrew from the firm. Mr. John Hays testified : 'I have spoken to Mr. Jarecki to have him protect us, and he declined to do it, so we continued to do it right along as public property.' This testimony has much the appearance of a recognition of the existence of the contract, else why if it was no longer in force should the respondents ask the complainant to protect them ? It strengthens the reasoning as to the individual liability to account for and pay the said royalties.

" There remains, then, of the defence to be considered, only the alleged violation of the contract on the part of Jarecki in licensing the Jarecki Manufacturing Co. to make and sell this article.

" The maxim that 'he who seeks equity must do equity' is invoked by the respondents, but it cannot go to the length they ask. There may be a question whether or not the exclusive rights granted by Jarecki were to continue longer than during the existence of the firm of Jarecki, Hays & Co.; but, waiving that question, this act of Jarecki's, if it be a violation of the contract, will not enure solely to the benefit of the respondents and permit or enable them to enjoy the fruits of the complainant's invention without accounting for the royalties. Unquestionably this act, if it were a violation of the contract, would justify the respondents in treating it as at an end; it would relieve them of their implied contract to prosecute the manufacture and sale of the articles, or, as it is called, 'practice the invention;' but it will not relieve them from the payment of royalties, if they continue the manufacture and sale of the articles : Oil Well Packer Co.'s Appeal, 128 Pa. 421 ; Marston v. Swett, supra ; Jackson v. Allen, 120 Mass. 64.

" There remains, however, another equitable principle in this case, which was not raised by counsel, but which the master believes should be considered. Of the original royalties reserved by and payable to Frederick Jarecki, his interest in the copartnership was charged with and paid one quarter; his interest in the Jarecki-Hays Co. being one fourth, still paid one quarter of the royalties—now it seems but equitable that the respondents should pay no more after the withdrawal of Mr. Jarecki than they did while he was a copartner with them, which was three fourths of the royalties reserved.

" The master having found as a matter of fact that the respondents have not since Jan. 1, 1887, manufactured and sold any articles charged with a royalty payable to the complainant, except the service boxes or cases made under letters patent, exhibit C, upon which the royalty is two and one half cents each for all manufactured, sold and for which pay was collected; the accounting therefore is for them at the rate of one and seven eighths cents each upon the number admitted by the respondents to have been made, sold and paid for since Jan. 1,

1877, and to Sept. 30, 1893, which is 55,495, and 1500 for which pay has not yet been collected. As the respondents failed to show during which months the 1500 unpaid for were made, and as it was incumbent upon them to do so, the master has deducted from those last made and sold the number for which pay has not yet been collected.

" There has been no discussion of the contract of June 8, 1885 ; it is proper therefore to remark that, aside from the specific reduction of the royalty upon the article known as 'service box,' which is made under letters patent, exhibit C, it has no effect upon the contract of May 1, 1878, except that by inference it recognized it as being in full force and effect.

" The master finds also, as a matter of law, that the periodic royalties being due and payable on the first day of each month, the amounts so due are entitled to draw interest from their dates. For the purpose of having even months in the computation of time to facilitate the calculation of interest, the first of February, 1893, is selected as the date to which interest shall be computed, it being the nearest date to the expected and intended filing of this report.

" Computing the royalties at the rate of three fourths of two and one half cents, which is one and seven eighths cents each upon the articles manufactured and sold and for which pay has been collected from the 1st of January, 1887, to the 30th of September, 1892, and the interest on the sums due on the first day of each month to the 1st of February, 1893, the master states the account between the parties.

" In conclusion the master respectfully recommends to the court the following decree : ' That the respondents, John W. Hays and William B. Hays, account to the complainant, Frederick Jarecki, for all articles manufactured by them under letters patent described in the contract of May 1, 1878, for which pay has been received, and that they pay over to him the sum of $1,256.20, with interest thereon from the first day of February, 1893, and that the respondents pay the costs of this suit.'

The contract referred to in the bill was as follows :

" Articles of agreement made and concluded the first day of May, A. D. one thousand eight hundred and seventy-eight, between Frederick Jarecki, of the city of Erie, state of Pennsyl-

vania, of the first part, and Wm. B. Hays, John W. Hays and Stephen J. Law, of the same place, of the second part, as follows, to wit:

"Whereas, the party of the first part, did obtain letters patent of the United States for an improvement in 'cases for shut-off rods and stopcock for gas and water pipes,' numbered 181,349, dated August 22, 1876, and reissued number 7440, dated December 19, 1876 ; also letters patent of the United States for 'improvements in cut-offs for gas and water pipes,' numbered 190,868, dated May 15, 1877 ; also letters patent of the dominion of Canada, numbered 7835, for 'Jarecki's shut-off cock for water and gas pipes,' dated Sept. 3, 1877 ; also letters patent of the dominion of Canada, numbered 8185, for 'Jarecki's extension street washer and cut-off casing,' dated Dec. 6, 1877 ; and whereas also the said party of the first part has made application for letters patent of the United States for an 'improved single pipe hydrant and street washer,' which application has been approved and allowed at the patent office of the United States, but letters patent not yet issued on same ; and

"Whereas, it is desired that the exclusive right to manufacture, use and vend the said articles described in said several letters patent and in said application shall be vested in the said Frederick Jarecki, William B. Hays, John W. Hays and Stephen J. Law, together doing business by the firm name of Jarecki, Hays & Co. ; now therefore :

"This agreement witnesseth : That the said party of the first part, as well in consideration of the premises as of the sum of one dollar to him in hand paid by the said parties of the second part, and of certain royalties to be hereafter paid by said firm of Jarecki, Hays & Co., as hereinafter mentioned, hath granted and sold unto said firm of Jarecki, Hays & Co., and unto the heirs and assigns of each of the members composing said firm in equal one fourth interest, the sole and exclusive right to manufacture, use and vend as well the said patented articles as the said articles for which applications for patents have been made, and any extension and reissue of same, and any improvement upon said articles which may be made by said Frederick Jarecki during the existence of said firm of Jarecki, Hays & Co.

" It is further agreed : That the said firm of Jarecki, Hays
& Co., their executors, administrators and assigns, shall pay
unto the said Frederick Jarecki, his legal representatives, for
each article manufactured by them under this agreement, and
which they may sell and collect pay for, the following sums re-
spectively : For each hydrant, twenty-five cents ; for each street
washer, twenty-five cents ; for each service box, five cents.

" It is also agreed that the said firm of Jarecki, Hays & Co.
shall keep accurate accounts showing at all times the amount
or amounts of any such articles by them manufactured and
sold, and showing also the amount or amounts of such sales
for which pay shall have been collected.  And the said firm
shall pay to said Frederick Jarecki on the first day of each
month the several amounts due him from collections for the
preceding month on sales made of such articles ; provided that
nothing shall be paid to said Frederick Jarecki for any articles
manufactured prior to the first day of May, 1878."

Exceptions to master's findings (4–6) were dismissed.

*Errors assigned* were dismissal of exceptions, quoting them.

*George A. Allen,* *L. Rosenzweig* and *Henry C. McCormick*
with him, for appellants, cited : Bisph. Eq., 3d ed. 60 ; Bleakley's
Ap., 66 Pa. 187 ; Angier v. Eaton, Cole & Burnham Co., 98
Pa. 594 ; Mints's Ap., 128 Pa. 163.

*J. C. Sturgeon,* for appellee, cited : Walker on Patents, § 274 ;
Washburn v. Gould, 3 Story, 122 ; Nellis v. Pennock Mfg. Co.,
13 Fed. R. 451 ; 2 Robinson on Patents, p. 573 ; Littlefield v.
Perry, 21 Wal. 205 ; Caster Co. v. Crossman, 3 Ban. & Ard.
281 ; Sizer v. Ray, 87 N. Y. 220 ; Clum v. Brewer, 2 Curtis C.
C. R. 506 ; Patterson's Ap., 99 Pa. 521 ; Oil Well Packer Co.'s
Ap., 128 Pa. 421, 157 Pa. 342 ; Marston v. Swett, 82 N. Y. 526.

Opinion by Mr. Justice Green, May 21, 1894 :

After a most patient and attentive consideration of the va-
rious contracts between the parties, and all the testimony in
the cause, we are constrained to say that we fully concur with
the learned master in his findings of fact, and also in his con-
clusions of law.  His entire report is a compact, forcible and

convincing presentation and treatment of the various matters of contention, and any opinion we might write would be a mere repetition of his findings and his reasoning. Upon the question of the individual operation of both of the contracts of 1878 and 1885 we think there can be no doubt. The parties are named as individuals, they sign as individuals, the heirs and assigns of each of the individual members of the firm are designated as successors to the rights of each of them, the interests of each member of the firm are precisely and individually stated, and while the firm name is occasionally used in its collective sense, the immediate context clearly shows that it was only as a convenient mode of expression. Thus when it is said, " That the firm of Jarecki, Hays & Co., their executors, administrators and assigns, shall pay unto the said Frederick Jarecki," etc., it is inevitable that the representatives of each individual were intended to be obligated, because a firm, as such, cannot have any such representatives. The continuance by the present defendants in the manufacture and sale of the patented articles is a sufficient reason for their liability to account, whether the patent was invalid or not, and whether the plaintiff had granted the same privilege to another company or not. The reasoning of the master on this subject and the authorities he cites are conclusive. We are clearly of opinion that the decree of the learned court below should be affirmed upon the findings and conclusions so well and lucidly expressed in the report of the master, and we so hold.

Decree affirmed and appeal dismissed at the cost of the appellants.