WATSON FIREPROOF WINDOW COMPANY, Re-
spondent, v. HENRY WEISS CORNICE COM-
PANY, Appellant.

Kansas City Court of Appeals, June 1, 1914.

1. **CONTRACTS: License: Royalties: Election.** The plaintiff
brought suit on a contract to recover from the defendant royal-
ties under a license to manufacture metal windows. The de-
fendant failed to pay part of the undisputed amount of a
royalty on the ground that it was induced to enter the con-
tract by intentionally false and misleading statements and

promises, not knowing them to be false, wherefore the contract was null and void. *Held,* that upon the discovery of the fraud by the defrauded party, he was put to his election either to stand upon the contract or to rescind it.

2. ———: ———: ———. When a party seeks to rescind a contract he must do so unequivocally and in a reasonable time and any unreasonable delay especially when accompanied by acts in recognition of the contract will condone the fraud and operate as an election to stand upon the contract.

3. AGENCY: Notice to Principal. A principal is bound only by such knowledge as an agent obtains in the scope and course of his employment and it devolved on defendant to show that the collectors sent out by plaintiff had authority to receive notice of the cancellation of the license.

4. COVENANTS: Mutual Consideration. Where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other. But .where they only go to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant and shall not plead it as a condition precedent.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore, Thos. H. Reynolds* and *O. W. Pratt* for appellant.

(1) Where a contract is induced by fraud the defrauded party can, upon discovery of the fraud, rescind the contract. Miller v. Crigler, 83 Mo. App. 401, and cases there cited. (2) Such a rescission is a rescission *in toto* and may be interposed as a defense in any action brought on the contract. Page on Contracts (1905), Section 136; Cecil v. Burger, 32 Mo. 462; Zang. v. Adams, 23 Colo. 408, S. C. 58 Am. St. Rep. 249; Och v. Railway Co., 130 Mo. 27.

*New & Krauthoff, Edwin Camack* and *P. E. Reeder* for respondent.

JOHNSON, J.—This action was begun August 7, 1912, in the circuit court of Jackson county, to recover royalties under a license dated November 1, 1910, authorizing defendant, a manufacturer in Kansas City, to make and sell a certain kind of metal window sash covered by letters patent issued in 1902, and owned by plaintiff. The petition alleges that in consideration of the license defendant agreed to pay plaintiff "as a royalty for the right and license to manufacture and sell such windows the sum of two cents per square foot contained in such windows so manufactured and sold . . . and . . . should make regular bimonthly reports showing the number of windows made and sold under the terms of said contract." That between November 1, 1910 and July 1, 1912, defendant made and sold 84,655 square feet of such windows and reported the same, that the royalties on these sales amounted to $1693.10, and that after deducting payments made by defendant amounting to $607.00 there remained $1086.10 due and unpaid upon the sales made during the period which, as stated, ended July 1, 1912. The action is for the recovery of this remainder.

The answer, in addition to a general denial, alleges that defendant "was induced to enter into the contract set forth in plaintiff's petition by intentionally false and misleading statements and promises upon which defendant relied, not knowing the same to be false, and that by reason thereof said contract is null and void. Further answering this defendant states that the plaintiff induced this defendant to enter into the contract referred to in said petition by collusion with other parties, competitors of this defendant, for the purpose of placing this defendant at a disadvantage in placing its products upon the market and that since said contract was entered into plaintiff has in pursuance of said collusion so conducted itself as to injure and defraud this defendant. And that upon the dis-

covery of said fraud said contract was repudiated by defendant.''

The reply is a general denial. The trial resulted in a directed verdict for plaintiff for the full amount of the demand. Defendant appealed and argues, in substance, that the court erred in directing a verdict in the face of evidence tending to show a breach by plaintiff of conditions in the license imposing upon plaintiff a duty to protect defendant against the injurious competition of infringing manufacturers and erred also in refusing proof offered by defendant in support of the allegations of its answer that the defendant had been induced to enter into the license contract by false and fraudulent representations of plaintiff.

The material facts of the case are as follows: Defendant, in common with many other manufacturers of window sash in the United States, had been infringing upon the patent owned by plaintiff and in 1910, plaintiff instituted and carried on a vigorous compaign against the infringers, the main purpose of which was to compel a substantial recognition of the patent. A number of manufacturers had been induced to enter into license contracts with plaintiff and suits for infringement had been instituted against others who had refused and were continuing to ignore the patent and the rights of plaintiff thereunder. Such was the situation when defendant received a letter from the attorneys for plaintiff dated July 20, 1910, urging defendant to enter into a license contract and making certain representations relating to the number of manufacturers who had taken out licenses, the terms of their contracts and the suits that were being prosecuted against others who were obdurate. This letter initiated negotiations that culminated in the contract in suit. We have referred to allegations in the petition which correctly state some of the terms of the contract. Among others of importance was one

181 App. 21

providing that the minimum annual sum paid by defendant in royalties should be $1,000.00; another requiring the licensor vigorously to assert its rights against infringers for the protection of the licensee, and another in which the licensor agreed not to grant other licenses on more favorable terms than those accorded by the license to defendant. It is conceded that from November 1, 1910, the date of the license until September 9, 1911, defendant performed the conditions of the contract, made the required reports and acknowledged the indebtedness for royalties as shown by them. Defendant then ceased making reports or payments upon the royalty account and for sometime answered requests for payments with excuses which in no manner suggested the defenses now being interposed. On December 28, 1911, defendant wrote a letter saying: "In reply to yours of the 26th, regarding balance on royalties, we fully intended to make settlement by the 15th, but we have been tied up to the extent of about $8,000 on a job in Denver and which has made us hard up. We regret that we are unable at this time to make this settlement, but assure you that we will do so at the very earliest possible moment."

Plaintiff afterward sent agents (one of them an attorney) to Kansas City to collect the account and complaints were made by defendant to these agents that plaintiff was not acting with sufficient vigor in the prosecution of its infringement suits and that defendant was losing business from the unfair competition of infringers but though put to the proof by the ruling of the court that evidence of fraudulent representations in the procurement of the license contract would not be admitted until after a repudiation of the contract by defendant had been shown, defendant was unable to adduce any evidence tending to show an election on its part to rescind the contract on the ground of fraud.

One of these collectors called on defendant in December, 1911, the other in the following January. Defendant offered to prove that one of its officers stated to each of them that "it had come to his knowledge in regard to the falseness of the statements that had been made at the time this contract was entered into and in regard to the failure of the Watson Window Company to grant the protection to which the Henry Weis Cornice Company was entitled, that the Henry Weis Cornice Company wouldn't make any further payments of any royalties and no longer considered itself bound by the contract."

Counsel for plaintiff objected on the ground that "the authority of the agents to receive notice of the rescission of the contract was not shown." The objection was sustained and this ruling is the foundation of defendant's claim that it was erroneously deprived of the defense of fraud.

The officer of defendant who was on the witness stand testified that he told the collector who called in January that defendant would pay royalties "up to a certain point and quit." When asked what he meant by "a certain point" he said "My recollection is, up to the point we had made reports—or rather the point we ceased making reports." This date was September 9, 1911. The attorney for plaintiff then sought to elicit testimony that the witness had told the collector the reasons for the discontinuance of the reports, viz., fraud in the inception of the contract and breach of the covenant to protect defendant against infringers, but the evidence was excluded on the objection of plaintiff. Counsel for defendant say in their statement: "The Weis Company strictly complied with the terms of the license for sometime after it was taken. Gradually, however, it learned of facts which little by little led it to the conclusion that it had been induced to enter into this agreement by fraud. It found that its competitors who had been represented as having

taken out similar licenses, were not using the Watson label and that there was reason to believe that other licenses which had· been represented as bona fide to the Weis Company when it was induced to .enter the contract, were colorable only and made for the purpose of getting the Weis Company to agree to pay a royalty that would put it out of the running in bidding against those manufacturers who were in collusion with the Watson Company.''

There is no proper charge of fraud in the answer. The rule is elementary that in pleading fraud the constitutive facts and not mere legal conclusions must be alleged. As is said in Nichols v. Stevens, 123 Mo. l. c. 117: ''In alleging fraud, it will not suffice to say that the party fraudulently procured, or fraudulently induced, or fraudulently did this or that, or that he committed or was guilty of fraud; the facts which constitute the fraud must be stated. Fraud is a conclusion of law.'' The averment that defendant ''was induced to enter into the contract by intentionally false and misleading statements and promises,'' and was induced ''to enter into the contract by collusion with other parties,'' etc., does not state facts but only conclusions of the pleader.

But since the issue of fraud did not turn at the trial on a question of pleading, we shall assume, but only for argument, that the answer was sufficient and shall discuss the ground on which the evidence of fraud offered by defendant was excluded. Our references to the evidence and the statements of counsel for defendant in their brief disclose that the position taken by defendant at the trial was that on September 9, 1911, it ceased to make reports because of its discovery of the facts on which its two defenses are predicated. Conceding, *arguendo,* the materiality of the alleged false and fraudulent representations which defendant asserts induced it to enter into the contract, we think the court ruled properly in requiring proof of a timely

election to rescind before going into the issue of fraud. The rule is well settled that upon the discovery of the fraud by the defrauded party, he is put to his election either to stand upon the contract or to rescind it. [Taylor v. Short, 107 Mo. l. c. 392; Meinershagen v. Taylor, 169 Mo. App. 22.] When a party seeks to rescind a contract he must do so unequivocally and in a reasonable time (Shultz v. Christman, 6 Mo. App. 338), and unreasonable delay, especially when accompanied by acts in recognition of the contract will condone the fraud and operate as an election to stand upon the contract. [Harms v. Wolf, 114 Mo. App. 387.] To put the defrauded party to his election it is not required "that the full features of the given fraud should be known to him . . . the right to rescind a contract must be exercised so soon as any one of the events which give rise to the right happens or is known to the person entitled to it." [Taylor v. Short, supra.]

Defendant continued for three or four months after its own evidence and position at the trial shows it had knowledge of facts which put it to an election, to recognize the contract as still in force. Indeed, it gave no legal notice of an intention to rescind until after the maturity of the demand in suit. A principal is bound only by such knowledge as an agent obtains in the scope and course of his employment (Kyle v. Goff, 105 Mo. App. 672) and it devolved on defendant to show that the collectors sent out by plaintiff had authority to receive notice of the cancellation of a license. No such authority was shown, nor could it be inferred from the mere fact that the collector was also an attorney.

But had the attorney been invested with such authority the alleged notice still would have been insufficient, as well as untimely. The rule as to notices in such cases thus is stated in Skinner v. Walter A. Wood Co., 140 N. Y. 217, 35 N. E. 491: "A licensor is entitled to assume that his licensee remains such until the

latter, by a clear, definite, and unequivocal notice, emanating from lawful and competent authority, throws off the protection of the licensee, and stands admittedly an infringer, if the patent is valid. The licensor is not to be left in a doubtful or uncertain position. He must not be exposed to the double danger of being defeated in a suit for infringement by a plea of license never effectually or authoritatively renounced, or, if he sues for royalties, of being beaten because there was merely an infringement, if anything. We think the alleged notices were insufficient, and so the defendant remained liable as licensee.''

Certainly an oral complaint and threat made to a collector three or four months after the receipt of knowledge putting the licensee to an election cannot be tortured into a lawful notice of a rescission and repudiation of the license. The court did not err in ruling that defendant had foreclosed its right to interpose the defense of fraud.

The second defense of a breach of the covenant to protect the licensee against the competition of infringers was properly excluded on the ground that it was an independent covenant which could not be interposed as a defense to an action for royalties and to be available in such action must be made the subject of a counterclaim.

The question of the dependence or independence of covenants primarily is a question of the intention of the parties as disclosed by the terms of the contract. [O'Neill v. Webb, 78 Mo. App. 1; Coal Co. v. Packing Co., 138 Mo. App. 274, and cases cited.] ''Where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other. But where they only go to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent.'' [Boone v. Eyre, 1 Bl. W. 273.]

Since the covenant in question was independent under the rule above stated it could not serve as a defense to the action (Birdsall v. Perego, 3 Fed. Cases, 446, 5 Blatch 251; Jarecki v. Hays, 161 Pa. 613, 29 Atl. 118; Strong v. Carver Co., 83 N. E. (Mass.) 328; Springfield Seed Co. v. Walt, 94 Mo. App. 76; Turner v. Mellier, 59 Mo. 526; Sawyer v. Christian, 40 Mo. App. 295) and, as stated, the damages resulting from its breach could be recovered by defendant only in a separate suit or by a counterclaim in this suit. [Springfield Seed Co. v. Walt, supra.]

The court did not err in directing a verdict for plaintiff since it is admitted "there is no dispute as to the amount of the royalties due under the contract assuming that there are any royalties due at all."

The judgment is affirmed. All concur.