The Rosenthal Paper Company, Respondent, *v.* The National Folding Box and Paper Company, Appellant.

First Department, December 29, 1916.

Contract — grant of license under letters patent — breach of contract by assignment by owner — waiver — personal contract not assignable.

Where the owner of letters patent for a folding clothing box granted to another the exclusive license to manufacture and sell said box within certain territory in consideration of the licensee paying royalties at a specified rate, the total amount to be not less than $500 per year, and said owner further agreed that he would "faithfully protect said Letters Patent from any and all substantial infringements" and that he would not sell within the territory described any box manufactured under said letters, and further that he would not sell any rights for any box to any one for the territory described, and soon after the execution of the contract the licensee discovered that other persons were selling boxes within said territory which were apparently infringements of the letters patent, which the owner made no effort to protect, and thereafter said owner assigned his entire right, title and interest in said letters patent and also in the written contract with the licensee, without the knowledge or consent of the licensee, he thereby put it out of his power to fulfill his concurrent obligation to protect and defend the patent, and committed a breach of the contract which relieved the licensee from the obligation of full performance.

The assignee of the owner cannot recover from the licensee the difference between the royalties paid at the specified rate and the stipulated minimum sum.

The licensee by continuing to manufacture and sell the boxes and to pay royalties upon those sold, did not waive the breach of the contract.

*It seems*, that the contract between the owner and the licensee was personal to the former and, therefore, unassignable by him.

Smith, J., dissented, with opinion.

Appeal by the defendant, The National Folding Box and Paper Company, from a determination and order of the Appellate Term of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of May, 1916, reversing a judgment of the City Court of the City of New York in favor of the defendant and setting aside the verdict of a jury in plaintiff's favor.

An appeal is also taken from the judgment of the City Court of the City of New York, entered in the office of the clerk of

said court, pursuant to the determination of the Appellate Term.

*Franklin M. Clark*, for the appellant.

*Joseph A. Arnold*, for the respondent.

SCOTT, J.:

Plaintiff sues as assignee of a contract made between one Isse Seligstein and the defendant, whereby said Seligstein, who was the sole owner of letters patent for a folding clothing, millinery . or suit box, known by the trade name as "The Lightning Box," granted to defendant the exclusive right to manufacture and sell said patented box within the border lines of some eleven States and the District of Columbia, including all the eastern and middle States. It was mutually agreed between the parties to the agreement that said exclusive right was sold upon certain "terms and conditions."

Defendant on its part agreed to pay to said Seligstein royalties at a specified rate upon all boxes sold, and expressly agreed "that the payment by the said The National Folding Box & Paper Company to said Seligstein for the right to manufacture and sell boxes under said Letters Patent shall not be less than the sum of five hundred dollars ($500) for each and every year during the life of this contract."

Seligstein on his part agreed (1) that he would "faithfully protect said Letters Patent from any and all substantial infringements of said Letters Patent;" and (2) that during the life of this contract he "will not sell within the territory, above described, any box manufactured under said Letters Patent * * *, nor any other clothing, millinery or suit box, and further that he will not during the life of this contract sell *any rights for any clothing, millinery or suit box to any one for the territory heretofore described.*"

The contract was dated in March, 1909, and was to run for five years, with an option to defendant to renew it for a further term of five years, and on the expiration of that term to renew it for the lifetime of the patent.

Soon after the execution of this contract defendant discovered that other persons were selling, within the aforesaid territory,

folding boxes which it believed, and apparently with reason, to be infringements of the patent mentioned in the foregoing contract. This competition, as may safely be inferred from the evidence, greatly interfered with its efforts to sell folding boxes under the license agreement with Seligstein, and in no year did the specific royalties upon the boxes sold amount to the stipulated minimum of $500. Defendant notified Seligstein of this apparent infringement, but the latter made no effort to protect his patent or his license. Defendant has fully paid all of the specific royalties at the agreed rates upon all of the boxes sold by it, but has refused to pay the difference between that amount and the stipulated minimum gross royalties of $500 for each year of the contract term. It is for this difference that plaintiff, as assignee of Seligstein, now sues. On January 22, 1912, Isse Seligstein executed a written assignment to plaintiff of his entire right, title and interest in and to the above-mentioned letters patent (with others), and further sold, assigned and transferred to said plaintiff "all of my right, title and interest in, to and under a certain written contract between myself and the National Folding Box & Paper Company, dated the —— day of March, 1909," being the contract now sued upon.

The defendant had no knowledge of the execution of this last-mentioned agreement, never consented to it, and never in any way accepted plaintiff as a contractor with it in place of Seligstein.

It continued to draw checks for the earned royalties to the order of Seligstein, and so careful was plaintiff that defendant should not learn of Seligstein's assignment of the letters patent and contract that it accepted defendant's checks to Seligstein's order, indorsing them with a simulated indorsement of Seligstein's name.

The defendant, by way of answer to plaintiff's complaint, sets up various defenses and counterclaims, some of which it will be necessary to consider. The trial court properly, as we think, dismissed the counterclaims, and submitted the cause to the jury upon the complaint and defenses. The plaintiff had a verdict which the trial justice, on motion, set aside, and thereupon dismissed the complaint upon the ground, expressed in a careful opinion (91 Misc. Rep. 405), that Seligstein by assign-

ing all of his right, title and interest in the letters patent had incapacitated himself from fulfilling his agreement to "faithfully protect" said patent from infringement, and thereby committed the first breach, equivalent to an anticipatory refusal to perform.    The Appellate Term seems to have entertained a somewhat different opinion, and consequently reversed the order of the trial justice and reinstated the verdict.    The respondent seeks to sustain the order of the Appellate Term now appealed from by arguing that even if Seligstein was guilty of a breach of his agreement to protect the patent, yet that his agreement so to do was an independent covenant the breach of which would not operate as a bar to a recovery of the royalties, but would only serve as the basis of a separate action for damages.  To support this argument certain cases are cited which, when properly considered, bear slight resemblance to the case at bar.  They are all actions to recover royalties which have been actually earned, or rent for a term which has actually been enjoyed, while here the only claim contested is for royalties which have not been earned, and to earn which the defendant relied upon Seligstein's agreement to protect his patent.    The distinction appears to us to be quite obvious.

We do not think, however, that Seligstein's undertaking to protect the patent can properly be classed as an independent covenant, but rather that it is concurrent and dependent.    How such mutual covenants are to be classed is always a matter of intention to be determined from the terms and language of the contract, with a strong tendency on the part of the courts at the present day to treat mutual covenants as dependent, unless the clear language of the contract is to the contrary, upon the ground that such a construction will in general produce the most fair and just results.    The rule to be applied is thus stated by Mr. Benjamin:  "Where from a consideration of the whole instrument it is clear that the one party relied upon his remedy, and not upon the performance of the condition by the other, such performance is not a condition precedent. But if the intention was to rely on the performance of the promise, and not on the remedy, the performance is a condition precedent."  (Benj. Sales [7th ed.], § 562, subd. 5.)  Applying

that rule to the present case it will readily be seen that there is no indication that defendant ever intended to rely upon its action for damages as a complete satisfaction for Seligstein's refusal or neglect to protect the patent. Such an action would almost inevitably be most unsatisfactory by reason of the very apparent difficulties in the way of actually proving the amount of damage suffered. On the other hand, defendant's success in making and selling the patented article would depend almost entirely on its protection from infringement and no one could afford such protection except the owner of the patent right, for he alone had a standing to sue. Nothing is more natural or more probable than that, when defendant covenanted that the royalties upon the sales would amount to at least $500 per annum, it relied and calculated upon enjoying within the stipulated territory the monopoly of making and selling boxes under Seligstein's letters patent, a monopoly which Seligstein had concurrently covenanted to "faithfully protect." When Seligstein refused so to protect the patent, or, what comes to the same thing, put it out of his power to do so, the consideration upon which defendant undertook that the royalties should amount to a fixed minimum sum per annum utterly failed. (*Wilfley* v. *New Standard Concentrator Co.*, 164 Fed. Rep. 421.)

It is to be observed that the contract between Seligstein and defendant was one which, from its very nature, was to remain executory during its full term, and never was until the end of that term "fully performed," as the Appellate Term seems to have considered that it had been, for the obligation of Seligstein to protect the patent, and of defendant to pay royalties was continuous. The contract could never, therefore, become fully executed until it was terminated.

Nothing is better settled in the law than that where one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it he has committed a breach of the contract which relieves the other party from the obligation of full performance on his part. (*Lovell* v. *St. Louis Mut. Life Ins. Co.*, 111 U. S. 264, 274.) It would needlessly extend the limits of this opinion to cite other authorities, of which there are many, for so well settled a proposition.

If then Seligstein, by his assignment to plaintiff of all his right, title and interest in and to the letters patent in question had put it out of his own power to fulfill his concurrent obligation to protect and defend the patent he committed a breach of the contract which relieved defendant from the obligation of full performance.

That Seligstein did so put it out of his power is obvious, and it is not seriously disputed. Having parted with all right, title and interest in the letters patent he clearly had no longer any interest therein to protect, and no standing to enjoin an infringement. He did not even exact from plaintiff any agreement to protect defendant's exclusive right to enjoy the monopoly created by the patent, so that as soon as the assignment from Seligstein to plaintiff became operative the defendant was deprived by Seligstein's act of the protection for which it had contracted. Seligstein, for the reasons stated, had incapacitated himself from protecting the patent; plaintiff had assumed no obligation to do so, and defendant, holding only a partial license to manufacture and sell, but not to use, being a mere licensee, probably could not have protected itself (*Gayler* v. *Wilder*, 10 How. [U. S.] 477), and even if it could, that was not what it had contracted for, or what it was entitled to.

We are, therefore, of the opinion that by assigning the letters patent absolutely to plaintiff, Seligstein was guilty of a breach of his contract with defendant, concurring on this point with the learned trial justice who has enriched and fortified his opinion on this branch of the case by the citation of a number of pertinent authorities.

It is urged that defendant waived this breach by continuing to manufacture and sell the boxes and to pay royalties upon those sold after the breach had occurred. It is apparent that this argument cannot prevail, and this for two reasons. In the first place, one cannot be held to waive a breach of which he is ignorant, and it most clearly appears not only that defendant was, in fact, ignorant of the assignment from Seligstein to plaintiff, but also that both Seligstein and plaintiff took effective means to preserve defendant's ignorance. In the second place, plaintiff's complaint is based upon an allegation of full performance by Seligstein and plaintiff, and such an allegation

is not satisfied by proof of a breach by plaintiff and a waiver by defendant. Defendant's payment of royalties, even if it had known of the assignment of the letters patent by Selig-stein, would not in any event have been a waiver of the breach, since it would have been bound and could have been compelled to pay so much even if it had been an infringer and had no license at all. (*Burdell* v. *Denig*, 92 U. S. 720; *Tilghman* v. *Proctor*, 125 id. 143.)

It is immaterial that the jury seems to have found, reading their verdict in the light of the court's charge, that there was no substantial infringement of the patent, although the evidence to the contrary is very persuasive and practically uncontradicted. The point is not that Seligstein failed to protect the patent, to defendant's damage, but that he incapacitated himself from protecting it and thereby committed a breach. Whether or not damage resulted from such a breach is not material to the defense, though it would be if defendant were affirmatively suing for such damages.

What has already been said is sufficient to indicate our concurrence with the action of the trial court and our dissent from the conclusion reached by the Appellate Term.

There are other reasons which have been strongly urged upon us and which are not without plausibility why the plaintiff cannot succeed.

One is that by assigning the letters patent to plaintiff absolutely, without limitation or restriction, and without exacting any protection for defendant's exclusive contract, Seligstein made it possible for plaintiff to invade defendant's territory, and that he thereby destroyed the exclusive feature of defendant's license.

A second reason is that the contract between Seligstein and defendant was personal to the assignor, and, therefore, unassignable by him. If so, of course, plaintiff cannot sue on it. This last reason strikes us with much force. Not only is there conspicuously absent from the contract between Seligstein and defendant any provision for an assignment by either party, but the contract calls for services, in certain contingencies, to be performed by Seligstein. As was said in a somewhat similar case: " There is no provision for an assignment by Light and Gray,

the other parties to the contract.   The absence of such a provision, or of the word 'assign,' would not be fatal, if it appeared from the true construction of the contract that the parties contemplated that it might be assigned by Light and Gray.   But the covenants in the warranty import personal and important liabilities on the part of the warrantors; and the defendant, in the absence of an agreement by it to that effect, cannot be compelled to substitute therein the plaintiff for Light and Gray." (*Gray Engine Starter Co.* v. *Gray & Davis*, 224 Fed. Rep. 723.)   The true rule is thus expressed in a well-known text book as follows: "Rights arising out of contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided." (Pollock Contr. [4th ed.] 425.)   Or, as was said by the Supreme Court of the United States, "Everyone has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent." (*Arkansas Smelting Co.* v. *Belden Co.*, 127 U. S. 387.)   The nature of the contract between Seligstein and defendant was such that it was or might be of great importance to defendant that the patent should be protected from infringement. It was willing to rely upon Seligstein for such protection, but it by no means followed that it would be or should be required to be equally well satisfied with any person responsible or irresponsible to whom Seligstein might without defendant's consent assign the contract.   It follows that the determination of the Appellate Term must be reversed and the order of the City Court affirmed, with costs to the appellant in all courts.

CLARKE, P. J., McLAUGHLIN and PAGE, JJ., concurred; SMITH, J., dissented.

SMITH, J. (dissenting):

One Seligstein was the owner of a patent for a folding paper box.   He gave an exclusive license to the defendant to manufacture and sell those boxes in certain territory, in consideration of the payment of royalties, which were not to be less than $500 per year, for five years.   In that license contract he cov-

enanted to faithfully protect said letters patent from any and all substantial infringements thereof. Within a short time after the execution of this contract with defendant, the defendant wrote to Seligstein calling his attention to the sale of similar boxes and asking whether they were not infringements upon his patent. Seligstein answered that they were infringements upon another patent existing. About two years after the making of the contract, and in August, 1911, the defendant wrote to Seligstein complaining that he was not protecting them against folding boxes which were offered for sale in their territory and which were thought to be infringements upon the patent, and suggesting that he ought either to protect them or release them from the minimum royalty. No answer was made to that letter. Thereafter, and in January, 1912, Seligstein assigned to the plaintiff his patent and all rights of action for infringements thereof and defendant's contract. The defendant paid to Seligstein, without knowledge of the assignment, the royalties for sales actually made, which did not amount to the minimum of $500 a year. This action is brought by the plaintiff as the assignee of Seligstein to recover the difference between the royalties paid and this minimum sum stated in the contract. The court submitted to the jury the question whether there had been any practical infringements of the patent or whether the defendant had waived any infringements if any existed, charging them if there were no substantial infringements or if the defendant had waived any infringements, that the plaintiff had the right to recover the amount. The jury found for the plaintiff for the full amount. Thereafter the trial court set aside said verdict and the complaint was dismissed upon the sole ground that the assignment by Seligstein to the plaintiff incapacitated him from performing his covenant to protect the license given to the defendant against infringements, and because he had thus incapacitated himself from performing, his assignee could not recover the minimum royalties stipulated. The Appellate Term has reversed this decision of the trial court, and has reinstated the verdict. From this order of the Appellate Term this appeal is taken.

The assignment of the patent and claims for infringement

incapacitated Seligstein from performing his covenant and constituted a breach thereof. Whether the breach of that covenant by Seligstein is a complete bar to this action is to be determined by the test whether Seligstein's covenant was a condition precedent or an independent covenant upon his part. If this covenant were a condition precedent, then his failure to perform that covenant would clearly be a bar to the action. If it simply was an independent covenant, then his failure to perform the covenant is not a bar to the action, but simply gives to the defendant the right to counterclaim damages for the breach or to bring a separate action therefor.

In *Watson Fireproof Window Co.* v. *Henry Weiss Cornice Co.* (181 Mo. App. 318), where a similar question arose, the court said: " The second defense of a breach of the covenant to protect the licensee against the competition of infringers was properly excluded on the ground that it was an independent covenant which could not be interposed as a defense to an action for royalties and to be available in such action must be made the subject of a counterclaim.   *   *   *   ' Where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other. But where they only go to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent.' (*Boone* v. *Eyre*, 1 Bl. H. 273.) Since the covenant in question was independent, under the rule above stated, it could not serve as a defense to the action,   *   *   *   and, as stated, the damages resulting from its breach could be recovered by defendant only in a separate suit or by a counterclaim in this suit."

In *Birdsall* v. *Perego* (5 Blatch. 251) suit was brought for royalties. In sustaining a demurrer to a plea alleging a violation of the contract the court said: "The third plea, as pleaded, admits the transfer to the defendant, of the exclusive right mentioned in the declaration   *   *   *; and if, after such transfer, the plaintiff infringed that exclusive right, the defendant would have a right of action for such infringement. It would not, however, be a defense to this action for the recovery of the sum agreed to be paid as a license fee for the machines

which the plea admits were made and sold by the defendant. Even if such damages could be deducted from the plaintiff's demand, by way of recoupment, the facts alleged would furnish no sufficient defense, by way of special plea, in bar of the plaintiff's action; for, recoupment is a matter which, it is said, is never pleaded in bar.  * * *  And, if such matter could be pleaded in bar of the action, it would be necessary to aver that the defendant's damages were at least equal to the damages of the plaintiff; for, otherwise, the plea would not answer the whole action, and would be bad for that reason.   But it is not matter for a plea in bar, under any circumstances,  * * * and, whether the defendant claims damages for an infringement of the exclusive right transferred to him, or for the violation of the plaintiff's agreement to allow him the exercise of that exclusive right, the rule of law and pleading is the same."

This rule is further illustrated in actions for rent, where it has always been held that a breach of a covenant by the lessor was no defense to an action, but could only be asserted by way of counterclaim.   In *Ely* v. *Spiero* (28 App. Div. 487) the opinion in part reads as follows: " Since the decision in the case of *The Mayor of New York* v. *Mabie* (13 N. Y. 151) the rule has been established in this State that a tenant sued for rent can recoup such damages as he may have suffered by reason of a breach of the landlord's covenant to repair the premises. (*Kelsey* v. *Ward*, 38 N. Y. 83; *Thomson-Houston El. Co.* v. *Durant L. I. Co.*, 144 id. 34, 44.) But the lessee's right to recoup which is asserted in cases of this kind means simply the right to plead a counterclaim under the Code. As Professor Pomeroy has pointed out in his able and instructive work on American code procedure, the recoupment of damages of the old practice has been transferred by all the Codes into a species of counterclaim. (Pom. Rem. & Rem. Rights, § 736.) In *Myers* v. *Burns* (35 N. Y. 269) and *Cook* v. *Soule* (56 id. 420) the damages growing out of the landlord's breach of his covenant to repair were in each instance set up specifically as a counterclaim; and that the breach of that covenant could not be pleaded simply as a defense is necessarily implied by the language of Andrews, Ch. J., in the case of *The Thomson-Houston El. Co.* v. *Durant L. I.*

*Co.* (*supra*), where he says: ' The plaintiff, having entered upon the demised premises under the lease and continued in possession, was bound to pay the rent reserved, and he could not defend on the ground that the covenant on the part of the lessor to put the premises in repair, or to make changes or alterations required by municipal or other legal authority, had not been performed. On the other hand, the lessor, when sued on his covenants, could not allege in bar of the action that the lessee had remained in possession of the premises. But either one, in an action brought against him by the other, could counterclaim any demand arising under the lease against the plaintiff in the action. * * *.' * * * The agreement of the plaintiff in the present case to furnish an electric current of a specified power to the defendant was just as independent of the defendant's covenant to pay rent as a covenant to repair would be, and it is equally subject to the rule thus laid down."

A distinction is asserted between the cases cited and the case at bar in that the licensee's contract was to pay the royalties upon sales actually made and, in addition to that, such sum as would make a minimum of $500. In this case the defendant has paid such sum as represents royalties upon the sales actually made, and is only sued for this minimum deficiency. It is contended that as to that sum the breach of the covenant to protect this licensee is a complete defense. I am not able to follow this reasoning. It is true that the consideration of the licensee's covenants was both the right to manufacture and sell the patented article and Seligstein's covenant to protect him. The contract itself does not separate the consideration so as to declare the payment of royalties on sales actually made to be the consideration for the right to manufacture and sell and the payment of such extra sum as would make a minimum of $500 as the consideration of Seligstein's covenant to protect the licensee. The consideration is not specifically severed by the contract, nor is it severable by the nature of the contract. For instance, the contract would be broken by failure to prosecute a single infringer, and the damage to the licensee might be very small. Nevertheless, the liability of the licensee under the contract would be to make

full payment up to the minimum amount less the damage thus suffered. The royalties paid have never amounted to $200 per year. It clearly cannot be held that the damage to the licensee on account of the plaintiff's breach of covenant amounts as matter of law to the remaining $300 per year. For the reason, then, that the consideration is not expressly severed by the terms of the contract and is not severable by the nature of the contract, the defendant is liable for the full minimum royalty with the right to recover by counterclaim or cross-action the damages which it has sustained by the breach of Seligstein's covenant.

But the trial court dismissed the counterclaims, notwith-standing the defendant proved the breach of the covenant and damage therefrom. If the counterclaims were improperly dismissed, then the verdict cannot be reinstated, but the judgment of the Appellate Term must be reversed and the judgment of the City Court modified so as to provide for a new trial. By section 502 of the Code of Civil Procedure a counterclaim may be asserted against an assignee only when the cause of action which is the subject thereof existed at the time of the assignment. There is no proof in the record of any specific amount of damage which the defendant had suffered by reason of the broken covenant for protection at the time of the assignment. The damages are sworn to as the total amount suffered by reason of the breach of covenant to the time when the contract terminated, and because the proof does not show the extent of the damage suffered to the time of the assignment of the contract, the defendant has not proven a counterclaim which is available against this plaintiff as the assignee of Seligstein. I am referred to no cases and have been unable to find any which impose upon this plaintiff by virtue of this assignment the obligation to protect the defendant. This appears to have been a personal covenant, and for its breach Seligstein is clearly liable to an action. However intimately associated with the subject of the contract, there is no authority cited to the effect that the assignee is thereby bound or is responsible for its breach. In the case of landlord and tenant there is specific statutory provision that the grantee of the landlord is bound during the term of the lease by the covenants of the leases

which run with the land. In *Ovington Brothers Co.* v. *Henshaw* (47 Misc. Rep. 167) it is held that the covenant of a lessor that at the end of the term he would pay for buildings to be erected by the lessee does not run with the land, and, therefore, the heirs, assigns or devisees of the lessor are not bound thereby unless by express words. That case was affirmed by the Appellate Division and by the Court of Appeals (115 App. Div. 886; 190 N. Y. 504).

The counterclaims were not, therefore, recoverable from the plaintiff.

Finally, the defendant claims that its contract with Seligstein was not assignable. The contract does not involve personal confidence or skill or obligations of such a nature as to import the personal performance thereof by the parties. A covenant to *faithfully* protect adds nothing to Seligstein's legal obligation in a covenant to protect. Every contract to an extent involves confidence that the other party will faithfully perform, and such confidence does not operate to make those contracts unassignable. Failure to protect amounts to a breach of the contract with its penalty in damages, whether that failure arises from a refusal to perform the covenant or from an act of the covenantor making the covenant impossible of performance. If we assume for the argument, however, that the covenant to protect in this case was a personal covenant of which Seligstein could not divest himself by assignment, nevertheless the assignment is good to pass to the plaintiff the royalties payable under the contract. (*Gray Engine Starter Co.* v. *Gray & Davis*, 224 Fed. Rep. 723.)

The judgment appealed from should, therefore, be affirmed.

Determination reversed and judgment of the City Court affirmed, with costs to appellant in all courts.